78 A.2d 669 (1951)
JANIFER
v.
WERNER.
No. 1002.
Municipal Court of Appeals for the District of Columbia.
Argued January 29, 1951.
Decided February 16, 1951.
Rehearing Denied March 15, 1951.
Joseph H. Schneider, Washington, D. C., with whom Ben Lindas, Washington, D. C., was on the brief, for appellant.
Herman Miller, Washington, D. C., for appellee.
Ruffin A. Brantley, Asst. Gen. Counsel, Washington, D. C., for Robert F. Cogswell, Administrator of Rent Control for District of Columbia, intervenor.
Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.
CLAGETT, Associate Judge.
Plaintiff Werner, a real estate agent, sued defendant Janifer for possession of premises located at 17 Logan Circle, N. W., on the ground of nonpayment of rent in the amount of $310. Defendant counterclaimed for double an overcharge in rent claiming that whereas the maximum rent ceiling for the leased accommodations was $70 a month, he had paid $185 for three months, making an excess of $345 less $8 for a balance due and owing.[1] He also sued for $14 for a plumbing bill he had paid for the owners. The trial court found for plaintiff on the original claim and also on the counterclaim, *670 including the plumbing bill item. Defendant appeals.
Mary M. Bethea and her daughter are co-owners of the property. It consists of a three-story semi-detached house containing ten rooms, two baths and a basement. It was purchased by the present owners in the spring of 1946. At that time, the house had been under lease by tenants of the former owner since 1938 at $70 a month unfurnished. After Mrs. Bethea obtained possession she had the house completely renovated and furnished as a rooming house. Subsequently, however, she moved out and leased the premises to Maynard Murphy who operated the rooming house. In February 1950, defendant Janifer leased the house "partly furnished" at $185 per month and also operated it as a rooming house. He failed to pay rent for June 1950 and a balance then existing for the previous month of May and this action was brought. Plaintiff does not claim that he or the owners had ever sought an adjustment of the rent ceiling from the Rent Administrator in accordance with the Act.[2]
It is the contention of plaintiff Werner and his principals, the co-owners of the property, that the renovations or repairs plus the furnishings in 1946 constituted new housing accommodations and that the $70 ceiling existing up to that time was no longer applicable. Defendant denies that these are new housing accommodations; that the repairs and alterations were greatly exaggerated and were at the most only capital improvements; and that at the time of his lease agreement, the premises were only partly furnished, and that this of itself did not constitute new housing accommodations. Both parties cite Delsnider v. Gould, 81 U.S.App.D.C. 54, 154 F.2d 844. There it was held that whether the housing accommodations involved are new ones differing from those on which a ceiling had previously been set, or are old ones with only substantial capital improvements or normal repairs is a question of fact which must, unless the evidence is compelling one way or the other, be decided by the trier of fact. "Housing accommodations" by statutory definition means the combination of real estate, personal property, furnishings, facilities, and services.[3] If it is determined that these are new housing accommodations, then the old ceiling is not applicable and the rental decided on by the parties in the lease agreement is controlling until a new one is set by the Rent Administrator.[4] In the present case, the trial judge, sitting without a jury, found that these were new housing accommodations and that the old rent ceiling was no longer applicable. Defendant and the intervenor contend that this finding was clearly wrong and had no sufficient evidence to sustain it.
To determine the conflict on this question, it is necessary to review the evidence. Mrs. Bethea testified that when she and her daughter bought the house in the spring of 1946, it was in a "terrible condition"; that many of the ceilings were down and there were holes in the walls; that the electric wiring was gone and there were no lights; that the heating and plumbing system was in a bad condition; that the floors and stairways were in need of replacement and repair; and that there had been a "half-bath" in the basement but that "the commode was gone entirely" and the tank could not be used. The exterior of the house was in similar condition. The drains and gutters were missing and the roof needed repair. The outside steps were "practically gone." Water leaked through the walls and the whole outside needed painting.
Contractors replastered the ceilings in five rooms; repaired holes in the walls and replastered them; partitioned a back room into two rooms and plastered these new walls; replaced parts of the flooring in the kitchen and one of the baths; replaced portions of the bannisters and steps; installed five new doors; painted all the interior *671 walls and woodwork; rewired the entire house and installed additional lights in the upper floors; installed a sink, gas range, and a hot water system, new pipes and fixtures in the upstairs bath and a new "half-bath" in the basement; fireproofed and painted the furnace room, repaired the furnace and replaced all pipes connecting to the furnace. The exterior of the house was given two coats of paint, roofs were replaced over three porches, two new steps were added in front of the house and the others repaired, and underground pipes which had burst were replaced. The entire cost of these repairs and installations, according to Mrs. Bethea's figures, amounted to over $5,000.
In addition Mrs. Bethea testified that she installed furniture at a value of over $4,000; that although some of it had been removed by former occupants without her consent and some pieces had been broken, much of this furniture still remains on the premises. This testimony was corroborated by the testimony of four of the present roomers in the house who stated that the furniture in their rooms belong to Mrs. Bethea. Maynard Murphy, who rented the premises from the owners before defendant Janifer, testified that Mrs. Bethea had furniture there.
Defendant attacks the weight given by the trial court to the testimony of Mrs. Bethea. He points out that she could not remember the names of all the contractors who worked on the premises in 1946 nor did she produce any major receipted bill for the work done. Mrs. Bethea stated that shortly after the remodeling was done, she married and in the process of moving lost her records concerning this matter. Since the trial of this case was four years after the actual events in issue, it is not incredible that a witness should forget names and minute details of the work done. In any event, it is the province of the trier of the facts to weigh the credibility of the witnesses. Soresi v. Repetti, D.C.Mun. App., 76 A.2d 585. We hold that under the proof the question of whether new housing accommodations had been established was one of fact and that there was substantial evidence to support the finding of the trial court.
Defendant also contends that since the premises were leased to him as "partly furnished" in 1950 they thereby lost their character as new housing accommodations. After the remodeling was done in 1946, the premises were first rented to Maynard Murphy at $185 per month. They were subsequently rented to the defendant at the same rate. That the premises had become only partly furnished in 1950 would not negative the fact that in 1946 because of furnishing and remodeling they assumed the character of new housing accommodations. The furnishing of the premises was but one factor in determining that the premises were such.
Defendant assigns as further error the trial court's refusal to grant a continuance of a hearing on a motion for a new trial in order that he might successfully subpoena a tenant of the former owners. Whether a continuance shall be granted even at the trial itself is largely within the discretion of the trial court. Hillyard v. Smither & Mayton, D.C.Mun.App., 76 A.2d 166. In the present case we hold there was insufficient showing of an abuse of discretion. We find no merit in other assignments of error.
Affirmed.
NOTES
[1] The District of Columbia Emergency Rent Act provides that if a landlord receives rent in excess of the maximum rent ceiling, the tenant may recover double the amount of the excess, plus costs and attorneys' fees. Code 1940, Supp. VII, § 45-1610(a).
[2] Code 1940, Supp. VII, § 45-1604(b).
[3] Code 1940, Supp. VII, § 45-1611(a, b); Delsnider v. Gould, 81 U.S.App.D.C. 54, 154 F.2d 844; Janes v. Noorbolm, D.C. Mun.App., 47 A.2d 105.
[4] Delsnider v. Gould, supra; Wilkerson v. Montgomery, 47 A.2d 102; Janes v. Noorbolm, supra.