## JANIFER et al. v. WERNER.

### No. 10976.

United States Court of Appeals District of Columbia Circuit.

.Argued Jan. 2, 1952.

Decided May 1, 1952.

Joseph H. Schneider, Washington, D. C., with whom Ben Lindas, Washington, D. C., was on the brief, for appellant Francis Janifer.

Ruffin A. Brantley, Asst. General Counsel, Office of the Administrator of Rent Control for the District of Columbia, Washington, D. C., with whom Ernest F. Williams, General Counsel, Washington, D. C., was on the brief, for appellant Robert F. Cogswell, Administrator of Rent Control for the District of Columbia.

Herman Miller, Washington, D. C., for appellee.

Before PRETTYMAN, PROCTOR and BAZELON, Circuit Judges.

BAZELON, Circuit Judge.

Section 2(1) (c) of the District of Columbia Emergency Rent Control Act[1] provides:

> "For housing accommodations not rented on January 1, 1941, nor within the year ending on that date, the rent and service generally prevailing for comparable housing accommodations as determined by the Administrator."

In Delsnider v. Gould,[2] we held that this section furnished the rental formula for units which, though rented on January 1, 1941,[3] had since been so improved as to constitute new housing accommodations. Pending disposition of an application for determination of rental ceilings on such housing, the rental agreed on between landlord and tenant was to prevail.

Unlike Delsnider, the landlord in the case before us did not file an application with the Rent Administrator for determination of a rent ceiling under § 2(1) (c). Despite this factual distinction, both the Municipal Court and the Municipal Court of Appeals[4] held the Delsnider rule applicable. Since this has the effect of validating a rental fixed by agreement between landlord and tenant, even though no application had ever been filed with the Rent Administrator, we thought it deserved consideration by this court.

The factual background of this case may be briefly summarized: the trial court found as a fact that on January 1, 1941, housing accommodations located on the same premises were rented for seventy dollars a month. In 1946 these accommodations were so improved by repairs and construction as to constitute new accommodations. In 1950 the landlord and tenant agreed upon a rental of $180 per month for said accommodations. This suit arose as an action by the landlord for possession because of non-payment of rent. The tenant counterclaimed for an alleged violation of the rent ceiling and sought judgment for double the excess charges.

We do not question the rulings below that the housing involved here is new within the meaning of § 2(1) (c). We do take issue, however, with the projection to this case of the Delsnider rule that the rental agreement should govern until the determination of the Administrator.

Implicit in the formula contained in § 2(1) (c) is the need for a factual determination by the Administrator, after application by the landlord, as to "the rent and service generally prevailing for comparable housing accommodations." Because of the limited investigative facilities available to the Rent Administrator, the period between filing of an application and disposition of it by the Administrator has often proved to be a lengthy one. It was to avoid the inequity inherent in a gap between new housing and old rentals that

1. 55 Stat. 788, ch. 553, § 2(1) (c), D.C. Code (1940) § 45–1602(1) (c).

2. 1946, 81 U.S.App.D.C. 54, 154 F.2d 844, 848.

3. 55 Stat. 788, ch. 553, § 2(1) (a), D.C. Code (1940) § 45–1602(1) (a).

4. Mun.Ct.App.D.C.1951, 78 A.2d 669, rehearing denied March 15, 1951.

the Administrator adopted the practice of allowing rentals fixed by agreement between the landlord and tenant to serve as interim ceilings.[5] Of course, such a practice involves a degree of risk since it entails temporary validation of that which might, upon scrutiny, prove excessive. Nevertheless, the risk is somewhat mitigated by the fact that the filing of an application for establishment of rental ceilings puts the Administrator on notice and gives him the opportunity to act at once on the most glaring abuses. We said in Delsnider, and we re-affirm now, that recognition of interim ceilings was "a satisfactory practical solution of a difficult administrative problem."

■ After Delsnider was decided, the Administrator became concerned lest its construction of what is new housing create a class of housing which would fall into a "no man's land," outside the reach of the statutory scheme for rent control. As a result, he issued a regulation in 1946 designed to avoid any undue extension of the Delsnider rule. That regulation, which was in effect when the tenancy in question here began, reads:

> "Before any housing accommodations in the District of Columbia in premises previously rented are offered for rent or actually rented, *where it is claimed by the landlord that such housing accommodations are so changed in structure, facilities or services as to constitute new housing accommodations* for which no maximum rent ceiling and minimum service standard exists, a petition for maximum rent ceiling and minimum service standard shall be filed in this office."[6]

Prior to its issuance, the regulation dealing with "new" housing was thought to apply only to newly constructed housing. The 1946 regulation was the first to deal with those units which had been converted from old to new. Its clear purpose was to hold such converted accommodations to the January 1, 1941, level until the landlord had complied with certain reasonable requirements as a condition precedent to exceeding that ceiling. Among those requirements is the notice-giving one which we consider to have been essential to our decision in Delsnider. As we have indicated in our discussion of that case, the filing of an application was and is a condition precedent to the recognition of contractual interim ceilings, pending determination of rental ceilings by the Administrator under § 2(1) (c).

■ We believe that deference to congressional concern lest inflation take its toll of rentals requires that gaps in the statutory scheme for rent control be avoided. The 1946 regulation prohibits the commencement of a tenancy for *any* converted accommodations until an application has been filed by the landlord. It requires a distortion of reasoning to read that prohibition into a total release from all manner of ceiling restrictions. And it does violence to the central purpose of the Act —namely, to provide a rent ceiling for all housing accommodations. In our view, the effect of that prohibition is not to release such accommodations but rather to leave the landlord where he is—namely, with a January 1, 1941, ceiling. This is a reasonable means for enforcing compliance with the application procedure. Only after the application has been filed would the Delsnider rule apply.

The judgment below must be reversed and remanded. The Municipal Court of Appeals will in turn remand to the Municipal Court with directions to enter judgment for the appellant on both the original claim for possession and the counterclaim for damages in an amount to be determined in accordance with this opinion. It is so ordered.

Reversed and remanded.

---

5. General Order No. 6 (September 30, 1942) provides: "Upon the filing of application and until the Administrator shall act upon the application and determine otherwise, the first rent received since January 1, 1941 shall be the maximum rent ceiling * * * for such housing accommodations."

6. Rules and Regulations of the Administrator, Part II, promulgated and approved April 23, 1946. Emphasis supplied.