## MORNING STAR LODGE NO. 40, I. B. P. O. ELKS of the WORLD v. HARRIS.

### No. 1271.

Municipal Court of Appeals
District of Columbia.

Argued Nov. 17, 1952.

Decided Dec. 19, 1952.

---

1. Brooks v. Jensen, D.C.Mun.App., 73 A.2d 32; Germaine v. Cramer, D.C.Mun.App., 65 A.2d 573.

Thurman L. Dodson, Washington, D. C., Robert L. Spivey, Washington, D. C., on the brief, for appellant.

Herman Miller, Washington, D. C., for appellee.

Before CAYTON, Chief Judge, and HOOD and QUINN, Associate Judges.

CAYTON, Chief Judge.

Two suits were presented to the trial court, one by a landlord for possession for non-payment of rent and the other by a tenant against the landlord for statutory rent overcharges. They were consolidated for trial.

Since there was no dispute that the rent was unpaid the controversy centered around the question as to whether there had been an overcharge. Two defenses were presented to that charge: (1) that defendant (owner of the premises) was merely an undisclosed principal; and (2) that because new housing accommodations had been created there was no violation of any preexisting ceiling. Both defenses were rejected by the trial judge who filed a memorandum summarizing the facts and the law. Landlord appeals.

From the evidence, most of which was uncontradicted, the judge could have found the following facts: The tenant Mary Harris entered into a contract on February 1, 1950 with a real estate broker named Fletcher for the rental of a house at $125 per month.[1] Soon after taking possession she complained to Fletcher, and later to trustees of Morning Star Lodge about lack of heat and other matters and was relieved of the payment of one month's rent. As of January 1, 1941,[2] the premises included a basement and the monthly rent on that date was $60. In 1945 the owner had installed a hot water heating system in place of a hot air system, the basement was sealed off and the use thereof taken from tenant and used by the landlord as a restaurant or grill. Also the kitchen was moved from the basement. There was evidence that the

---

1. Notwithstanding that the lease provided for a rental of $125 Mrs. Harris paid only $100 per month.

2. The statutory, freeze date. Code 1951, Supp. I, § 45–1602.

total cost of the work plus redecorating which was done later was about $3000. Most of that cost was for a renovation of the basement. In 1951 the Lodge authorized its agent Fletcher to seek an increase in the rental ceiling. On March 15, 1951, Fletcher wrote a letter to the trustees of the Lodge refusing to serve any longer as agent and stating that he had been to the Office of Rent Control to seek an increase and, "I found out the rent had already been set at Sixty Dollars, ($60.00) and I had been collecting [$40.00] over the rental ceiling of Sixty Dollars ($60.00) which is against the law." Nevertheless the Lodge itself continued to collect $100 a month from Mrs. Harris. On March 15, 1951 the Lodge petitioned for an increase in the rental ceiling from $60 to $125. This resulted in an "Order of Conciliation" signed by the Rent Administrator adjusting the rent ceiling upward to $85, effective February 8, 1952.

We do not think the defendant landlord was entitled to prevail on its defense of undisclosed principal. In essence the theory of that defense was that there was no privity between plaintiff and defendant. But the action was not in contract; it was brought to recover a statutory obligation.

■■■ The Rent Act provides that if any "landlord" receives rent in violation of a maximum rent ceiling, the tenant paying such rent may bring an action for double the amount by which the rent paid exceeds the ceiling.[3] And the Act defines a landlord to include "an owner * . * * or other person entitled to receive rent * *." [4] We think there can be no question that the right to collect for overcharges may be pursued against an owner who has actually received excessive rent. Dunning v. Randall H. Hagner & Co., D.C.Mun. App., 63 A.2d 770, cited by appellant, does not require a different result. There a broker was sued for overcharges he had collected under a direct contract with a tenant, and we held that the trial court was wrong in exonerating him of liability. We did not rule that the owner was free of liability; on the contrary we were careful

to say, "On the record before us the broker was equally guilty with the owner." Even less applicable is Goldberg v. Chas. C. Koones & Co., D.C.Mun.App., 66 A.2d 495, where we held that an agent who had entered into an apartment lease as landlord was answerable for refusal to make plumbing repairs.

■ On the evidence before him the trial judge would have been fully justified in finding that the defendant not only knew the amounts being collected by the agent Fletcher but directed him to collect those amounts. This is borne out by the testimony of Fletcher, his letter to defendant quitting his agency, and the fact that defendant thereafter continued to collect $100 a month from plaintiff. We rule that notwithstanding the fact that defendant may (for a very brief period) have been an undisclosed principal its affirmative actions have brought it within the liability imposed by the statute.

■ We turn to the contention that the landlord had created new housing accommodations. We are satisfied that it cannot be said as a matter of law that changing the heating system, removing the kitchen to another part of the house, sealing off the basement to the tenant, and the subsequent redecoration made the premises new housing accommodations as a matter of law. Landlord's showing was not so compelling as to require such a ruling under Delsnider v. Gould, 81 U.S.App.D.C. 54, 154 F.2d 844. The question was one of fact.

Appellant argues that it should not be held liable for any rent overcharge after March, 1951, the date it applied to the Administrator for an adjustment in the rent ceiling. This contention is necessarily predicated on an assumption that new housing accommodations had been created, and that the parties could legally contract for an interim ceiling, pending the Administrator's action on the petition for increase.

■ But the trial court found as a fact that the landlord did not prove its claim of new housing accommodations, and

3. Code 1951, Supp. I, § 45–1610.

4. Code 1951, Supp. I, § 45–1611(g).

that finding disposes of this particular contention. The contention must also fail for a stronger reason—a legal one. As in the Delsnider case, the United States Court of Appeals sanctioned the recognition of interim ceilings in Janifer v. Werner, 90 U.S.App.D.C. 406, 196 F.2d 244. But the court made it clear that such may be a defense to a suit for a rent overcharge only when a landlord has filed a timely petition before the Rent Administrator alleging that the premises have been changed into new housing accommodations. Appellant made no claim when it filed its petition in 1951 that these premises had become new housing accommodations. It sought an increase of an established ceiling (which it acknowledged was $60) on the grounds of increased operating costs and that because of certain expenditures for heating plant, papering and painting, and utilities furnished to the tenant there were "peculiar circumstances" justifying an increase. Moreover the petition itself was not filed until some five or six years after the changes and improvements mainly relied upon as creating new housing accommodations. The claim of new housing accommodations was asserted for the first time when the pleadings in this case were filed in the Municipal Court. Clearly appellant's position is that of a landlord upon whose premises a ceiling had been set by law and who has filed a petition for increase on other grounds. Such a landlord cannot by lease or other contract raise the rent ceiling previously established, nor avoid the effects of it.[5] And the adjustment in the rent ceiling granted by the Administrator had no retroactive effect; it operated prospectively only [6]—in this case from February 8, 1952. The old ceiling remained effective until that date.

■ We conclude that the defendant is liable in the amount found by the trial court for rent overcharges. That being more than sufficient to offset the rent due the defendant, the trial court was right in denying defendant's claim for possession. Lalekos v. Manset, D.C.Mun.App., 47 A.2d 617.

Affirmed.

5. Code 1951, Supp. I, § 45–1605(a).

6. Wilner v. Vartanian, D.C.Mun.App., 55 A.2d 88; Moore v. Coates, D.C.Mun. App., 40 A.2d 68.