359 A.2d 140 (1976)
APARTMENT AND OFFICE BUILDING ASSOCIATION OF METROPOLITAN WASHINGTON et al., Petitioners,
v.
The Honorable Luke C. MOORE, Judge, Superior Court of the District of Columbia, Respondent.
No. 10601.
District of Columbia Court of Appeals.
Argued April 14, 1976.
Decided June 14, 1976.
Rehearing en Banc Denied July 22, 1976.
Eric Von Salzen, Washington, D. C., with whom Kevin P. Charles and Martin Klepper, Washington, D. C., were on the petition, for petitioners.
Michael A. Cain, Asst. Corp. Counsel, with whom Louis P. Robbins, Principal Asst. Corp. Counsel, and John C. Salyer, *141 Asst. Corp. Counsel, were on the answer to petition, for respondent.
Before REILLY, Chief Judge, and FICKLING and NEBEKER, Associate Judges.
NEBEKER, Associate Judge:
On July 16, 1975, this court's judgment in lieu of mandate in Apartment and Office Building Association of Metropolitan Washington v. Washington, D.C.App., 343 A.2d 323, 333 (1975), directed (1) that as an alternative to outright injunctions of rent control, the government be given 90 days to adopt and to implement means of affording reasonably prompt vindication of the cost pass-through right, an integral part of the 1973 congressional rent control authorization, and (2) that in the interim period, rent increases be allowed on a general or on an individual basis if necessary in order to keep rent revenue abreast of the increased costs and the right of owners to a reasonable return. The trial court chose to treat the interim requests individually.[1] No significant progress was made during this 90-day period. It is therefore clear that the trial court mistakenly failed to notice that with the expiration of this deadline, our mandate was not complied with.[2] Instead, on February 17, 1976, the trial court issued an order, significantly predicated on its finding of need for court-ordered rent increases, which, according to petitioners, was not in compliance with our earlier holding. We agree with petitioners and, in view of the trial court's failure to comply with our mandate, issue an order for relief as will appear herein. See Appendix, infra.
During the pendency of the remand proceeding, the District of Columbia Rental Accommodations Act of 1975, enacted by the District Council, became effective. See D.C.Law No. 1-33, 22 D.C.Register 2498 (November 13, 1975).[3] The 1973 congressional enactment had expired by its own terms with one significant exception which provided that
as to . . . rights or liabilities incurred, prior to such termination date, the provisions of sections 45-1621 to 45-1627, and such rules, orders, and requirements, shall be treated as still remaining in force for the purpose of sustaining any proper suit . . . with respect to any such right [or] liability.. . . [See D.C.Code 1974 Supp., § 45-1627(a).]
Notwithstanding this provision, vesting petitioners' rights to a pass-through of increased operating costs, the trial court adopted a means of calculating rent increases contained in the new Act. It permitted increases in rent "as would generate a rate of return of no greater than 8%. . . as computed according to § 204(a)(3)(b), D.C.Law 1-33 . . . ." It also denied a requested rent surcharge calculated to make up for operating costs not offset due to earlier failure to grant rent increases. In addition, rent increases were denied to anyone who had received such an increase under the new law.[4]
*142 In the ultimate analysis, petitioners assert that under our mandate and § 45-1627(a), supra, they are entitled to have rent increases for the interim period together with whatever impact such increase orders will have on their base rent for the future. That was the effect of the relief we ordered, and neither the expiration of the 90-day period nor the enactment of a new rent control program alters the rights which earlier vested.
We need not here deal with the method of calculation under the new Rental Accommodations Act whereby an 8% rate of return is fixed. It is sufficient to observe that before the "rent freeze" of May 1974 and the rent control program of August 1974 (see Apartment and Office Building Association of Metropolitan Washington v. Washington, supra), some of the petitioners were making a reasonable return in excess of that rated calculation. Under the 1974 program and the 1973 enabling legislation, a cost pass-through right existed and as to the class it vested. The class members are therefore entitled to have rents set on that basis, for if the return exceeds the 8% rate of return as determined under the new Act no mandatory rent roll-back is required. Moreover, there are differences in the two rent control programs, the most significant being the exclusion from the latter program of mortgage interest and other operational debt-related costs in computing the 8% rate of return.
There remains the question of how the needed relief is to be supplied. Our earlier holding gave the trial judge a choice whether within the 90-day grace period to grant an across-the-board rent increase or to act on individual applications. He chose the latter, but events show that such method has proved unworkable. As Chief Judge Reilly observed in his concurring opinion in the previous appeal, "Congress did not direct the Superior Court to administer and enforce pass-through rights". Id. at 334. However, Congress did provide for judicial review in the Superior Court. See D.C.Code 1974 Supp., § 45-1625 (a). That review has been timely sought and rights appertaining thereto continue. See § 45-1627(a), supra. The need for prompt and effective relief also continues. We are of the view, in light of the delay and administrative lethargy under the old rent control program and the congested docket of the trial court,[5] that relief of the kind proposed by petitioners to the trial court is in order. We include, as an appendix hereto, that proposed order and direct its prompt implementation with one modification. In essence, we permit rent adjustments to become effective under the old program upon the filing with the court and with the Rent Administrator a certified statement showing the current annual costs, base period annual costs, annual amount of cost increase, monthly amount of cost increase, unit pass-through amount, and the amount of the adjusted rent ceiling allowed under the order.[6] The agency would retain the right to audit and inspect such statements should the adjustment be challenged.
Our point of modification of plaintiffs' proposed order is at the "Recoupment Surcharge". We fail to see, and we are *143 shown no authority for imposing, a surcharge on future rent to make up for past deficiencies. Such a surcharge would be inequitable, for the burden of make-up payments would then fall upon tenants not in possession for the period of deficiency, or upon tenants then in possession who might have exercised an option to quit. In any event, and contrary to the government's suggestion that a surcharge has impact on the premises, a surcharge operates in the nature of a judgment for rent due against persons not parties to the action. Increased rents, even under a rent control program, operate prospectively.[7] It is unfortunate that petitioners were prevented from passing on past cost increases over which they had no control, but the instant judicial proceedings are not suited to reimburse them for those losses. Whether another meaningful remedy exists for failure of the state to vindicate the pass-through right, we leave to those who possess it.
The petition is granted and a certified copy of this opinion in lieu of a writ shall issue. Respondent is to proceed consistent herewith.
So ordered.

APPENDIX

SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA

Civil Division

Civil Action No. 7040-74

APARTMENT AND OFFICE BUILDING ASSOCIATION OF METROPOLITAN WASHINGTON, ET AL., PLAINTIFFS,

vs.

WALTER E. WASHINGTON, Mayor, ET AL., DEFENDANTS.

ORDER
Pursuant to the mandate of the Court of Appeals and its Opinion entered July 16, 1975 (D.C.App. Nos. 8985 and 9083) directing this Court to determine the sufficiency of the 12.32% across-the-board rent ceiling provided in Regulation No. 74-20, and further to determine what amount of additional increase (if any) is required thereto, the Court having heard testimony presented by the class plaintiffs, plaintiff Schramm, the government defendants, and the defendant-intervenors, and having heard arguments of counsel, and the Court having determined that the 12.32% across-the-board rent ceiling formula is insufficient and that an additional increase is required, it is by the Court
ORDERED, that each member of the plaintiff class may adjust the rent ceiling for each housing accommodation (rental unit) by an amount computed as follows:
a) from (1) the total amount of operating costs of the building (as defined by the Housing Rent Commission in its Instructions for Filing Landlord Petitions for Rent Adjustment or Advance Ruling), during a twelve month period ending no more than three months prior to the date of the Notice of Increase hereinafter described (which costs are hereinafter referred to as the "Current Annual Costs"), subtract (2) the total amount of operating costs of the building during the period July 1, 1972 through June 30, 1973, that is, the twelve month period the approximate mid-point of which is February 1, 1973 (which costs are hereinafter referred to as the "Base Period Annual Costs"); the result of the foregoing calculations is hereinafter referred to as the "Annual Amount of Increased Cost";
b) divide the Annual Amount of Increased Cost by twelve (12) to give the "Monthly Amount of Increased Cost";
*144 c) add the Monthly Amount of Increased Cost to the aggregate of the base rents of all housing accommodations in the building (as reported in the Registration Form for the building) to give the "Allowable Building Income";
d) subtract from the Allowable Building Income the aggregate of the current rents of all housing accommodations in the building (as reported in the most recent Registration Form for the building) to give the "Building Pass-Through Amount";
e) allocate the Building Pass-Through Amount among the units in the building either in proportion to their current rents or in a manner tending to equalize the rents of comparable units in the building, to give the Unit Pass-Through Amount for each unit, and add the Unit Pass-Through Amount to the current rent of each unit; and it is
FURTHER ORDERED, that the landlord of each housing accommodation which is entitled to a rent ceiling adjustment pursuant to this Order, shall file with the Rent Administrator (as the successor of the Housing Rent Commission), a certified Statement showing the Current Annual Costs, Base Period Annual Costs, Annual Amount of Cost Increase, Monthly Amount of Cost Increase, Unit Pass-Through Amount, and the amount of the adjusted rent ceiling allowed pursuant to this Order; such statement shall contain a certification signed by the landlord or his agent, in the following form:
"I/we hereby certify that the information given herein is true to the best of my/our knowledge and belief;
"I/we understand that any person who willfully makes a false or misleading statement filed with the Rent Administrator may be fined not more than $5,000 for each violation."
And it is
FURTHER ORDERED, that the rent ceiling adjustment permitted for any housing accommodation pursuant to this Order may be instituted on the next regular rent due date, or any regular rent due date thereafter, provided, however, that the landlord shall have delivered (or caused to be delivered) to the tenant of such housing accommodation a Notice of Increase, including all information contained in the aforesaid Certified Statement applicable to such housing accommodation, no fewer than ten (10) days prior to such rent due date; provided, further, however, that nothing contained in this Order shall be construed to authorize any landlord to charge a rent for any housing accommodation in excess of the rent stated in a valid written lease or rental agreement in effect between the landlord and tenant of such housing accommodation for the term of such written lease or rental agreement; and it is
FURTHER ORDERED, that nothing contained herein shall be construed to derogate the authority of the Rent Administrator to audit the books and records of any housing accommodation, but no such audit shall stay the landlord's entitlement to receive any rental increase allowed pursuant to this Order; and it is
FURTHER ORDERED, that the government defendants, and all persons acting under their authority or on their behalf, are hereby permanently enjoined from enforcing on any landlord any rent ceiling for any housing accommodation lesser in amount than the amount authorized by this Order.
FICKLING, Associate Judge (dissenting):
The petitioners filed in this court an original petition for a writ of mandamus charging that the trial judge failed to comply with our mandate in Apartment and Office Building Association of Metropolitan Washington v. Washington, D.C.App., *145 343 A.2d 323, decided on July 16, 1975.[*] The majority grants the writ and proceeds to fashion its own remedy.
I oppose the granting of the writ because the trial court did in fact comply with our mandate.
These are the facts: (1) We stated in our opinion on July 16, 1975, 343 A.2d at 333:
To this end, and without presently enjoining the enforcement of the rent control program, the government should be given 90 days from the date of transmittal of our mandate to adopt and implement means of affording reasonably prompt vindication of the so-called pass-through right and the right to a reasonable return. We leave it to the trial court in the first instance to determine the reasonableness and workability of these means. As to the interim, the trial court is directed to determine whether the 12.32% across-the-board increase is sufficient for these purposes or whether an additional amount of increase is necessary to the statutory ends. In the event of the latter, that court may decide on ordering a general increase for all plaintiffs and members of the class as may be determined after class certification action, or to make individual determinations as requests for specific rent increases can demonstrate their merit. [Footnote omitted.]
(2) Enactment of a new rent control program, then known as Bill 1-157, became effective on September 23, 1975, as the second phase of D.C.Act 1-35. 22 D.C. Register 841 et seq. It was extended by D.C.Act 1-158 until D.C.Act 1-46 became effective as D.C.Law 1-33 on November 1, 1975. 22 D.C.Register 2122a, 2489 et seq.
(3) Pursuant to our mandate, the trial court on September 29 and 30, and October 2, 3, 6, and 8, 1975, conducted hearings on the matter of interim relief and rendered an opinion and order on October 31, 1975, finding, among other things, that 12.32% across-the-board was inadequate. (4) On February 14, 1976, the trial court issued a final order granting relief to the petitioners.
The majority holds that our mandate was not complied with because the government did not, within 90 days of our mandate, adopt and implement means of affording reasonably prompt vindication of the cost pass-through right. However, during this 90-day period, the government enacted a new rent control law setting forth a new formula for rent control in which pass-through was a factor. This formula was used by the trial court in granting relief pursuant to our mandate. The adequacy of this relief is an issue in the appeal now pending.
We further instructed the trial court as follows: "We leave it to the trial court in the first instance to determine the reasonableness and workability of these means." 343 A.2d at 333. This instruction certainly indicates broad discretion in fashioning the relief mandated by this court. A writ of mandamus is not to be used to review discretionary acts of the trial judge, United States ex rel. McLennan v. Wilbur, 283 U.S. 414, 420, 51 S.Ct. 502, 75 L.Ed. 1148, (1931); Laughlin v. Reynolds, 90 U.S. App.D.C. 414, 415, 196 F.2d 863, 864 (1952), nor is it a substitute for an appeal, Will v. United States, 389 U.S. 90, 97, 88 S.Ct. 269, 19 L.Ed.2d 305, (1967); Morrow v. District of Columbia, 135 U.S.App.D.C. 160, 168, 417 F.2d 728, 736 (1969). In my opinion, the use of the writ in this case is an abuse of power by this court. It infers that the trial court completely ignored our *146 mandate. The facts clearly demonstrate that this is not the case.
Nor do I think that a writ of mandamus is an appropriate vehicle for this court to fashion relief based upon conflicting testimony and evidence.
I respectfully dissent.
NOTES
[1] The class action nature of the case, earlier improperly treated, was also rectified and the matter now stands as a suit by a class of identified members.
[2] With all deference to our dissenting colleague, we do not suggest that the trial judge "completely ignored" our mandate. To the contrary, there is no doubt that he struggled greatly to do with rent control that which was primarily for the administrator. The simple fact is that needed and legitimate relief has proved to be unavailable except by the means we now direct.
[3] The validity of this new Act is attacked in an appeal which will be heard in the near future (D.C. Court of Appeals No. 10666).
[4] By an earlier action, the trial court set a deadline for filing rent increase petitions. This was clearly arbitrary since that date was about one week before the court's action and earlier notice was not provided. See Brenner v. Ebbert, 130 U.S.App.D.C. 168, 171, 398 F.2d 762, 765 (1968). In view of our disposition on the broader issue presented, we need not fashion future relief from this action.
[5] We note that chaos in administering a law may make it unconstitutional. Boddie v. Connecticut, 401 U.S. 371, 379, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971); Housing and Development Administration v. Community Improvement Program, Inc., 83 Misc.2d 977, 374 N.Y.S.2d 520, 524 (1975).
[6] This proposal was rejected by the trial judge in his October 31, 1975, Memorandum Opinion and Order. On Nov. 11, 1975, petitioners moved for reconsideration of this rejected proposal. To date, the trial court has not formally responded to the motion. We note in passing that petitioners' proposal, had it been adopted during the 90-day period, would not have been inconsistent with our mandate. Now that the mandate has failed of implementation, we are left no choice but to direct prompt effectuation of the most immediate relief available. This method is also intended to relieve the Superior Court of the apparently unmanageable burden of ruling in advance on individual petitions.
[7] Morning Star Lodge No. 40, I.B.P.O. Elks of the World v. Harris, D.C.Mun.App., 93 A. 2d 288 (1952); Eldora Realty Corp. v. Dean, 6 Misc.2d 222, 163 N.Y.S.2d 197 (1957).
[*] There is pending before this court an appeal from the final order issued in Apartment & Office Bldg. Ass'n of Metropolitan Washington v. Washington, D.C.App., No. 10666.