Regina COBB, Appellant,

v.

Bernard BYNUM, Appellee.

No. 10804.

District of Columbia Court of Appeals.

Argued May 19, 1977.

Decided June 2, 1978.

Hal H. Thurston, Washington, D. C., for appellant.

Before KELLY, KERN and HARRIS, Associate Judges.

KELLY, Associate Judge:

This appeal is from a judgment entered in consolidated actions brought in Superior Court by the appellee-landlord against appellant-tenant to recover unpaid rent and for possession of property based upon the same unpaid rent. The jury returned a verdict for the landlord in the amount of $1,772, reflective of a 50% abatement in the rent arrearages claimed and possession of the property was conditioned on payment of arrearages and continued payment of rent. The principal issue before this court is whether the trial court erred in refusing to order that the rental fee charged by the landlord for the months in question be "rolled back" so as to comply with the District of Columbia's rent control legislation.[1] We reverse.

On April 1, 1974, appellant commenced tenancy in a house in Northwest Washington, D. C., for a rental fee of $300 per month. Evidence introduced at trial estab-

---

1. Appellant also contends that the trial court improperly instructed the jury on the extent of the remedy available to a tenant for a landlord's failure to maintain the leased premises in a safe and sanitary condition. Since we reverse on other grounds, we need not reach this issue.

lished that appellee was not the owner of the house, but instead was a sublessor. A co-owner, Ms. Lottie Skipper, testified that she rented the house to appellee in January 1974, pursuant to a five-year lease. The terms of that lease provided that appellee was to make repairs to the house before subleasing it. Appellant ceased paying rent sometime in 1975, and it was stipulated, based upon a rental fee of $300 per month, that the amount of rent in arrears at the time of trial was $3,544.[2] In her pleadings, appellant raised defenses and counterclaims based upon a breach of the warranty of habitability, contending that because of the unsafe and unsanitary conditions in the house the lease should be declared void. She also asserted that the amount of rent claimed was in excess of that allowed by the District's rent control legislation.

In the main, the testimony at trial concerned the condition of the leased premises at the inception of the tenancy and thereafter. In addition, eight Housing Code Regulation Violation Notices were introduced into evidence. Appellee's testimony was that he made certain repairs to the premises but was prevented by the tenant from making others.

The cases were presented to the jury to ascertain the amount of rent, if any, that was due appellee in light of his failure to maintain safe and sanitary housing conditions. The jury returned a verdict for the appellee in the amount of $1,772, which figure reflected a 50% abatement in the rent claimed. At a post-trial hearing on the question of whether the jury verdict should

be reduced because the amount of rent charged by appellee exceeded the maximum allowable rent under rent control, the trial court refused to order a roll back of the monthly rental fee and allowed the jury verdict to stand.

District of Columbia Regulation No. 74–20,[3] enacted pursuant to the District of Columbia Rent Control Act of 1973,[4] established rent control and a Housing Rent Commission for the District of Columbia. The Act authorized the District of Columbia City Council to "adopt such rules as it determines necessary and appropriate to regulate and stabilize rents in the District of Columbia . . . ."[5] Regulation No. 74–20 included, *inter alia*, provisions which:

(a) set a base rent ceiling for all rental accommodations of 112.32% of the rent which was in effect on February 1, 1973 (§ 5b); and

(b) required rents in excess of this ceiling to be "rolled back" to this ceiling as of the next regular rental date after the Regulation's promulgation (§ 5d).

Appellant contends that pursuant to the above provisions, the amount of rent claimed to be in arrears is excessive as a matter of law. While she concedes that the $300 monthly fee specified in the lease was lawful from the inception of the tenancy in April 1974 through July 1974,[6] she posits that from August 1974 until November 1974, the maximum allowable monthly rental fee was $185.33 [7] and that from December 1974 until the date of trial the maxi-

---

2. The appellant made only partial payments for the months of February and March 1975.

3. 21 D.C.Register 289 (Aug. 6, 1974).

4. D.C.Code 1974 Supp., § 45–1621 *et seq.* The Rent Control Act became law on November 21, 1973. This congressional enactment has since expired, and the District of Columbia Rental Accommodations Act of 1975, which was enacted by the District Council took its place and has also since expired. *See* D.C. Law No. 1–33, 22 D.C.Register 2498 (Nov. 13, 1975). We note, however, that the 1973 Act was in effect during the entire time period in which the facts in the instant case took place.

5. D.C.Code 1974 Supp., § 45–1622(a).

6. This period preceded the effective date of the rent control program. Regulation 74–20 took effect on August 1, 1974.

7. Pursuant to § 5b of Regulation No. 74–20, the rent ceiling after August 1, 1974 would be 112.32% of the February 1, 1973 base rent. On February 1, 1973, the monthly rental fee charged for the subject realty was $165 (112.32% of $165 equals $185.33).

mum allowable monthly rental fee was $165.[8]

The trial court declined to roll back the rental fees because ". . . the application of a roll back would be unconstitutional as applied to Mr. Bynum [the landlord]." Specifically, the court explained:

I am mindful of not only the volume but the tremendous social problems in the housing but this Court must say on the record that I have no doubt that if indeed the provisions were applied as requested by the defendant and counterclaimant in this case, that that house would have to be boarded up. There would be no economic function. It would be a deprivation of the use—it would be, in effect, saying that the property has no economic value.

The trial court also seemed to rely on the fact that appellant received rental contributions from three other persons who also lived in the house:

But the problem I have in the case is [Mrs. Cobb], by her own testimony, not only collected the rent from two other people in the house, albeit, members of her family, but from a third who was not a member of her family.

There is some evidence and the Court so finds from the evidence that of the so-called rent of $165, [Mrs. Cobb] was receiving far in addition to that when she leased it or when she paid the rent to Mr. Bynum and paid it for over a period of almost a year. It would appear that she and her daughter were living there for less than $60 a month, based on her testimony.

There is a strong presumption in favor of the constitutionality of a legislative act. *Murray Co. v. National Mortgage Corp.*, D.C.App., 299 A.2d 147 (1973); *Hicks v. District of Columbia*, D.C.App., 197 A.2d 154 (1964). *See also District of Columbia v. Edgcomb*, D.C.App., 305 A.2d 506 (1973). Moreover, rent control per se is constitutional. *Bowles v. Willingham*, 321 U.S. 503, 64 S.Ct. 641, 88 L.Ed. 892 (1944); *Block v. Hirsh*, 256 U.S. 135, 41 S.Ct. 458, 65 L.Ed. 865 (1921). Courts have a limited role in reviewing legislation such as this, and the wisdom or expediency of the legislative method is not subject to review. *Hutton Park Gardens v. West Orange*, 68 N.J. 543, 563, 350 A.2d 1, 10–11 (1975); *Troy Hills Village v. Township Council*, 68 N.J. 604, 631–32, 350 A.2d 34, 49 (1975); *Westchester West No. 2 Ltd. Partnership v. Montgomery County*, 276 Md. 448, 455, 348 A.2d 856, 860 (1975). The judiciary cannot substitute its own judgment of what is wise or unwise for that of the legislature. *See Bowles v. Willingham, supra*, 321 U.S. at 515, 64 S.Ct. 641; *Northern Securities Co. v. United States*, 193 U.S. 197, 337–38, 24 S.Ct. 436, 48 L.Ed. 679 (1904). In the absence of some constitutional restriction, the legislature must be free to adopt economic policies designed to promote the public welfare. A court's function in reviewing rent control legislation is to protect the property owner from regulation which is so unreasonable as to constitute a taking of his property in contravention of the Fifth Amendment. *See Apartment and Office Building Association of Metropolitan Washington v. Washington*, D.C.App., 381 A.2d 588, 591 (1977).

The trial judge in the instant case made no general finding of constitutional infirmity.[9] Instead, he projected as to what

---

**8.** Section 9e of Regulation 74–20 provides that landlords who do not register with the Housing Rent Commission are not eligible for any rent increase adjustment 60 days after the confirmation of the Commission members. Appellee had at no time before trial in this matter registered with the Commission. The Commission members were confirmed on October 1, 1974. Hence, appellant contends that since the 60-day grace period for registration ended on November 30, 1974, the maximum allowable

monthly rental fee from December 1, 1974 on was the base rent of February 1, 1973, or $165.

**9.** We must point out that this court in the case of *Apartment and Office Building Association of Metropolitan Washington v. Washington*, D.C.App., 343 A.2d 323 (1975) (*AOBA I*), did find that in enacting the Rent Control Act of 1973 (which has since expired, *see* note 4, *supra*) the Council did not comply with one particular legislative purpose: The expressed congressional intent that a landlord must be able

would happen if rent control were to be imposed upon appellee and announced his displeasure with this projected result. Hence, in light of the foregoing and upon the record in the instant case, we are constrained to conclude that it was error for the trial court to declare the rent control legislation unconstitutional as applied to appellee.

*Reversed and remanded.*

to pass on his increased operating costs to the tenant in any rent control program the Council might enact. The *AOBA I* court then ordered a stay on rent roll backs with respect to any landlord who had petitioned the commission pursuant to the hardship provision of the Regulation. Appellee filed no such petition; in fact, as we said in note 8, *supra*, he never even registered with the Commission as a landlord. Hence, it cannot be argued that our holding in *AOBA I* obviates the need for a roll back in the instant case.