SCHOLTZ PARTNERSHIP, Petitioner,

v.

DISTRICT OF COLUMBIA RENTAL ACCOMMODATIONS COMMISSION, Respondent,

Bay State Tenants Association, Intervenor.

Violet V. YAGEL, Petitioner,

v.

DISTRICT OF COLUMBIA RENTAL ACCOMMODATIONS COMMISSION, Respondent.

SCHOLTZ PARTNERSHIP, Petitioner,

v.

DISTRICT OF COLUMBIA RENTAL ACCOMMODATIONS COMMISSION and Jerome Shuman, Chairman, Respondents.

I. ORNSTEIN et al., Petitioners,

v.

DISTRICT OF COLUMBIA RENTAL ACCOMMODATIONS COMMISSION, Respondent,

Mishey L. Proctor et al. (Parkway Plaza Tenants), Intervenors.

Nos. 79–212, 79–330, 79–336 and 79–435.

District of Columbia Court of Appeals.

Argued Dec. 13, 1979.

Decided Feb. 20, 1981.

William E. Rollow, Washington, D. C., for petitioners.

Eric Von Salzen, Washington, D. C., for Apartment and Office Building Association of Metropolitan Washington, amicus curiae.

Richard B. Nettler, Asst. Corp. Counsel, Washington, D. C., with whom Judith W. Rogers, Corp. Counsel, and Richard W. Barton, Deputy Corp. Counsel at the time the case was argued, Washington, D. C., were on the brief, for respondents.

Before GALLAGHER, NEBEKER and MACK, Associate Judges.

NEBEKER, Associate Judge:

These four petitions for review present questions precipitated under two successive rent control laws because rent increase applications filed under the earlier law were

decided after its expiration and the effective date of the successor law. We do not decide the constitutional issues raised by petitioners because of record deficiencies. We affirm the decisions as to three cases—Nos. 79–212, 79–330, 79–336—but we reverse and remand No. 79–435 for disposition under the Act in effect when the application was filed because of a vested right to a decision under that Act.

## I. RENT CONTROL BACKGROUND

■ These consolidated cases came to this court on the threshold of yet another effort by the Council of the District of Columbia to enact a workable rent control law. Recognizing impending collapse of the rental housing market under the weight of nationwide inflation, the Congress and the Council initiated in 1974 the first of three rent control measures which share a critical objective. This objective, from the beginning, was to provide for the continuing availability of residential rental units at a stabilized rent sufficient to protect consumers from chimerical rent fluctuations and to ensure landlords a fair rate of return from their property. The difficulty of attaining this objective without significant rancor, frustration, and hardship speaks for itself. Predictably, the creation and administration of a mechanism to enforce rent control in such a way as to permit both a pass-through of landlord costs and a check on erratic rent increases has been chaotic.

These four landlord petitions for hardship rent increases were first filed with the Rental Accommodations Office under the second rent control law in the twilight days of the life of that Act. The Rental Accommodations Act of 1975, D.C.Law No. 1–33, D.C.Code 1978 Supp., § 45–1631 et seq. The Rent Administrator granted these hardship increases but the Commission, on appeal, rejected the petitions, requiring the landlords to meet the less favorable conditions of the new law which was in effect at the time of the Commission's decision. The Rental Accommodations Act of 1977, D.C.Law No. 2–54, D.C.Code 1980 Supp., § 45–1681 et seq. The landlords' petitions

to this court for review of the Commission decisions involve consideration of the four major elements of rent control which have been utilized in one fashion or another in all three acts: (1) the so-called automatic rent increase provided on a city-wide basis to counteract the general effects of inflation; (2) the hardship increase provided to individual landlords to pass through specific increased costs; (3) the formula assigned for computation of these landlord costs; and (4) the hearing procedures for hardship increases.

Legal challenge to these elements of rent control is not unique in the history of the three acts. The first act, established by Regulation of the City Council on August 1, 1974, 21 D.C.Reg. 289 (1974), pursuant to the congressionally enacted Rent Control Act, D.C.Code 1974 Supp., § 45–1621 et seq., provided an automatic 12.3 percent across the board rent increase, a process for adjustments of rent based on landlord hardship, and a requirement that the Commission act upon these hardship petitions within sixty days. In Apartment and Office Building Association of Metropolitan Washington v. Washington, D.C.App., 343 A.2d 323 (1975), this court held that the statutory history of the enabling act mandated a viable procedure for cost pass-through to protect landlords from uncontrollable costs and the rental community from a housing shortage due to the withdrawal of rental property from the market. Furthermore, in the face of the Commission's inability to decide hardship petitions within sixty days, we ordered the government to fashion a method of vindicating the pass-through right within ninety days. Our order was based on the premise that "statutory rights become totally illusory if the system charged with protecting them becomes so lethargic and cumbersome as to be inoperable." Id. at 331.

This Regulation was succeeded by the Rental Accommodations Act of 1975, effective on November 1, 1975. Petitioners filed their hardship petitions under this Act (D.C. Code 1978 Supp., § 45–1644), seeking to take advantage of its salient elements. The

Act provided an automatic rent increase up to a designated rent ceiling. Like the previous Regulation, the Act also provided that any landlord who had not obtained an 8% rate of return after an automatic rent increase could file a hardship petition to obtain an increase sufficient to raise his rate of return to the 8% level. D.C.Code 1978 Supp., § 45–1649. The amount of relief granted was within the discretion of the Administrator, giving due regard to the concomitant hardship the increase would place on the tenants. D.C.Code 1978 Supp., § 45–1649(a). A significant deduction permitted the landlord in computing his rate of return (and, hence, the amount of rent increase for which he qualified) was the straight-line depreciation of the building equal to 2% of the total assessed value of the property, or an even greater amount if the Rent Administrator found it justified. *See Tenants of 3039 Q Street v. D. C. Rental Accommodations Commission,* D.C. App., 391 A.2d 785 (1978). Although this hardship increase, once approved, could be taken in addition to the automatic increase without any waiting period, the Rent Administrator was authorized to dismiss hardship petitions filed within six months of an increase granted under another previous petition. D.C.Code 1978 Supp., § 45–1652(e). Finally, the Act required the Rent Administrator to render a decision on a petition within sixty days of its filing day. D.C. Code 1978 Supp., § 45–1652(a).

The legislative history of this second act reveals that the Council was quite cognizant of our decision in *Apartment and Office Building Association v. Washington, supra,* 343 A.2d at 323, and was concerned that a serious effort to overcome the administrative deficiencies in the first rent control act was needed. In a second suit by the Apartment and Office Building Association, this court upheld the 1975 Act against constitutional attack. *Apartment and Office Building Association of Metropolitan Washington v. Washington,* D.C.App., 381 A.2d 588 (1977). There we held, *inter alia,* that landlords did not have a constitutional

right to an immediate pass-through of increased costs, that the target of an 8% rate of return in the Act was not confiscatory, and that the administrative mechanism for processing of landlord petitions was not so inherently unworkable as to render the Act confiscatory.

Despite our decision in *Apartment and Office Building Association v. Washington, supra,* 381 A.2d 588, subsequent events revealing the inadequacies of the 1975 Act and of its enforcement led to the passage of the present Act. For instance, the administrative problems continued, exacerbated by the failure to appoint a permanent Rent Administrator until April 11, 1977. Numerous petitions for hardship increases were backlogged in the Commission. In response, beginning in the summer of 1976, the City Council passed a series of virtually identical emergency acts designed to ameliorate some of the administrative difficulties of the Rental Accommodations Office. The legislative history of the present rent control law, the 1977 Act, indicates that one of the major objectives of the new legislation was to remedy these bureaucratic inefficiencies and develop a more streamlined, self-administering program.

Thus, the present law which went into effect on March 16, 1978, succeeding D.C. Law No. 1–33 (the 1975 Act), contained several provisions which significantly altered the law.[1] The present Act retains the automatic increase provision and the hardship petition provision characteristic of the previous two acts, but now *guarantees* the landlord's increase of rent to the 8% rate of return level when he has filed a verified hardship petition. However, in the view of petitioners, another change in the law counteracts the benefit of this guaranteed increase. The Act requires that this increase to an 8% rate of return level be accomplished in one step. Thus, the landlord is required to elect between an automatic increase which is effected merely be issuing thirty days' notice to tenants and a

1. Yet a fourth rent control act has been passed by the Council. It was presented to Congress on Jan. 13, 1981, and may be effected under the terms of D.C.Code 1980 Supp., § 1–147(c).

hardship petition which would bring his rental income up to the guarantee level.[2] In an attempt to avoid the impact of this election requirement, petitioners seek their hardship increase under the 1975 Act, assuming that they may also take an automatic increase under the 1977 Act. Both an automatic and a hardship increase are forbidden under the new Act. This effort is the real crux of petitioners' complaint in the case.

Further tightening of the Act, which petitioners wish to avoid, was accomplished by limiting the landlord's depreciation deduction used in computing his rate of return to no more than 2% of the assessed value of the building with no depreciation allowed for land. D.C.Code 1980 Supp., § 45–1693(b)(1)(A); cf. *Tenants Council of Tiber Island v. Carrolsburg Square*, D.C.App., 426 A.2d 868 (1981) (under the 1975 Act, the landlord has the option to take 2% of the assessed market value of the property *and* the land as depreciation expense).[3] For increased efficiency of administration, the new Act also provides that if the Rent Administrator does not act on a hardship petition within ninety days, it shall automatically be instituted by the landlord on a provisional basis, pending consideration by the Rent Administrator in the appropriate manner. D.C.Code 1980 Supp., § 45–1688(c).[4] Furthermore, petitions may be dismissed if filed within six months after a previous hardship increase, and no adjustments under the Act may be implemented within 180 days since any prior adjustment. Consequently, a landlord can file a hardship petition no more often than every six months.

At the time the 1977 Act became effective, many landlord hardship petitions were before the Rental Accommodations Office for hearing or before the Commission on appeal. As to these hundreds of cases, the question necessarily arose whether they should be decided on the basis of the law in effect at the time they were filed, the 1975 Act, or on the basis of the law in effect at the time of decision by the agency, the 1977 Act. The initial position of the Commission on this crucial question was that all petitions filed under the 1975 Act were to be decided under the more favorable terms of that law. The Commission further concluded that the base rent for determination of rent increases under the 1977 Act would include any increase granted under the 1975 Act, whether issued before or after the expiration of the 1975 Act. Therefore, under the Commission's interpretation, landlords were well advised to file for the 1975 Act hardship before expiration of the Act to boost their base rent and thus their subsequent automatic increases under the 1977 Act. This tactic was encouraged by the Commission's interpretation of the interplay of the 1975 Act's hardship increase and the 1977 Act's automatic increase in light of the following language in the 1977 Act:

> Furthermore, if the landlord—even after a hardship increase—is able to show a negative cash flow, he may petition for a rent increase sufficient to generate a ¼% cash flow. D.C. Code 1980 Supp., § 45–1693(c).

2. *This election procedure creates two likely options for landlords. On the one hand, a landlord whose rate of return, combined with an automatic increase under the Act, would yield a final rate of return greater than 8% would elect the automatic increase under the 1977 Act. On the other hand, a landlord whose return when combined with an automatic increase would not yield 8% would elect a hardship petition. The efficiency of this one step process is obvious.*

*The 8% rate of return under the 1977 Act is characterized as a "guaranteed" return because under the new Act once the hardship petition is verified, the Rent Administrator has no discretion to decrease the landlord's increase based on any hardship that tenants might experience. D.C.Code 1980 Supp., § 45–1693(a). This was not true under the 1975 Act. D.C.Code 1978 Supp., § 45–1649(b).*

3. *The new Act also eliminates several other lesser expenses which the landlord was permitted to take under the 1975 Act. See D.C.Code 1980 Supp., § 45–1693(b)(1)(A) through (F).*

4. *We feel obliged to note that in the very first challenge to rent control in this city, then Chief Judge Reilly proposed a similar automatic process as a remedy for the administrative backlog which the Housing Rent Commission was experiencing at that time. Apartment and Office Building Association v. Washington, supra, 343 A.2d at 334 (Reilly, C. J., concurring).*

"No adjustment in rent under this subchapter may be implemented unless and until a full one hundred and eighty (180) days have elapsed since any prior adjustment." D.C. Code 1980 Supp., § 45–1689(h). The Commission concluded that this language permitted a landlord to take an automatic increase under the 1977 Act immediately followed by or simultaneously with a hardship increase under the 1975 Act if the petition was filed before the expiration of that Act. The rationale for the decision was that the 1975 hardship petition was not an increase "under this subchapter" and, thus, required no waiting period. The reverse order of rent increases, however, would not be permitted under the same reasoning, since the automatic increase was under the new Act and, thus, required a waiting period of 180 days subsequent to a 1975 Act hardship increase.[5] Petitioners contend that this interpretation was correct, permitting them a dip from the old Act and one from the new.

The Corporation Counsel, however, responding to another request for an interpretation from the Rent Administrator, took a different position. It was his position that all pending petitions were governed by the 1977 Act and that landlords must follow a one step process, electing either to proceed with their hardship petitions under the new Act or to accept the automatic increase provided under that Act.

## II. TIMING OF THE INCREASE PETITIONS

Consideration of these cases by the court requires attention to the timing of each petition as it compares with both the procedures mandated in the 1975 Act and the critical date of that Act's demise as law in the District of Columbia.

### No. 79–212

The landlord in this case filed a hardship petition under the 1975 Act thirteen days before its expiration and, in addition, informed the Rent Administrator two days after the effective date of the 1977 Act that he intended to take an automatic increase under that Act. The landlord implemented the automatic increase and was later granted the hardship increase under the provisions of the 1975 Act. On appeal, the Commission ruled that the 1977 Act should apply and ordered the landlord to make an election between the automatic increase and the hardship petition. If the landlord elected to proceed with the hardship petition, the matter was to be remanded to the Rent Administrator for consideration in accordance with the 1977 Act.

### No. 79–336

The order of events in this case is substantially the same as that in No. 79–212. Here the landlord filed a hardship petition two weeks before the expiration of the 1975 Act and took the automatic increase under the 1977 Act approximately ten weeks after the effective date of that Act. The hearing examiner granted a hardship increase but on appeal, the Commission once again held that the 1977 Act must apply and the landlord must make an election between the hardship and the automatic increase.

### No. 79–330

This case is somewhat dissimilar to the first two. The landlord filed his hardship petition under the 1975 Act within thirteen days of its expiration date. While that petition was pending, the landlord took the automatic increase authorized under the 1977 Act. The hardship petition was granted for a lower rate than that requested by the landlord, pending abatement of housing code violations, and the landlord appealed. The landlord, however, attempted to with-

---

5. As indicated below, we find it difficult to understand how the Commission could attribute such weight to this language that whether a landlord could take one or two increases depended solely on the order in which he took them. This error, apparently, resulted from the Commission beginning with an imperfect premise in interpreting the statute. This premise was that the agency must struggle against a retroactive application of law. This is a correct statement of law, although as a first premise it begs the question presented. The analysis used in *Bradley, infra,* and which we follow, is used to determine (1) if the present law is, in fact, retroactive and (2) if so, whether it ought to be applied nonetheless.

draw her appeal upon learning that if she pressed the appeal, she would suffer the same fate as the landlords in Nos. 79–212 and 79–336. The Commission permitted withdrawal of the appeal subject to the landlord electing between the hardship petition or the automatic increase under the 1977 Act.

### No. 79–435

The landlord in this case filed his hardship petition under the 1975 Act on December 19, 1977, almost three months before the expiration of the Act. The decision of the hearing examiner was delayed until June 9, 1978, at which time a lower increase than that requested by the landlord was granted. Prior to implementing the hardship increase, in the now familiar pattern inspired by the Commission's earlier interpretation of the interplay of the two acts, the landlord implemented the automatic increase provided in the 1977 Act. On appeal, the Commission ruled that since the petition was pending on the effective date of the 1977 Act, the petition should have been considered under that Act and, thus, the landlord should have made an election between the hardship petition and the automatic increase.

There are three particular distinctions among these petitions. Two of them were filed within days of the expiration of the 1975 Act and were denied on appeal under the 1977 Act. One petition was filed within days of the expiration of the 1975 Act and the Commission retained jurisdiction to deny the hardship increase, although the landlord had sought to withdraw the petition. And finally, one petition was filed early enough to receive a decision under the sixty-day statutory requirement, before the expiration of the 1975 Act, if there had been no unauthorized delay in the process.

### III. THIS COURT'S DECISION

Petitioners advance four arguments: (1) that application of the 1977 Act to their petitions filed under the 1975 Act is retroactive application of the law because the hardship increase is intended as a catch-up increase and, therefore, they are vested with a right to an increase based on the earlier accounting year statistics; (2) that reversal of the Rent Administrator's decision by the Commission without a hearing to determine whether the landlords were actually earning an 8% rate of return constituted unconstitutional confiscation; (3) that the new Act is unconstitutional because it does not take into consideration predictable future expenses in computing rent increases; and (4) that deliberate delay in administering the 1975 Act until after its expiration entitles the petitioner in No. 79–435 to the benefits of that Act.

We choose not to decide the second and third issues as to the constitutionality of the 1977 Act because the record in this case is insufficient to establish a foundation for a constitutional decision. *See Carr v. District of Columbia,* 177 U.S.App.D.C. 432, 434–35, 543 F.2d 917, 919–20 (1976); *Cobb v. Bynum,* D.C.App., 387 A.2d 1095, 1097–98 (1978); *Apartment and Office Building Association v. Washington, supra,* 381 A.2d at 593 n.9; *cf. Apartment and Office Building Association v. Washington, supra,* 343 A.2d at 323. In regard to the remaining contentions, we affirm the Commission's decisions in Nos. 79–212, 79–330 and 79–336, and reverse and remand for reconsideration in No. 79–435 under the provisions of the 1975 Act.

■ Petitioners' first contention—that application of the 1977 Act to their petitions, filed under the previous Act, is a retroactive application of law—is a conclusory argument which is not helpful in determining the issue of whether laws presently in effect interfere impermissibly with antecedent rights. *See generally* Hochman, *The Supreme Court and the Constitutionality of Retroactive Legislation,* 73 Harv.L.Rev. 692, 696 (1960). All laws, when enacted, retroactively impair expectations; the real issue is a matter of the degree of the impairment and of whether the expectation is one of right. *Id.* at 692. Considered together, the impairment and the right may reach a critical mass as to create a *fait accompli* so that application of the law in effect at the time of decision is unjust.

The correct first step, however, is to recognize that an administrative agency must apply the law in effect at the time of its decision in order to avoid sanctioning illegal conduct. *Ziffrin v. United States,* 318 U.S. 73, 78, 63 S.Ct. 465, 468, 87 L.Ed. 621 (1943); *cf. Columbia Realty Venture v. D. C. Housing Rent Commission,* D.C.App., 350 A.2d 120, 123 (1975) (if an agency acts without the authorization of law, it deprives the party whose conduct is being regulated of his property without due process). When the Commission made its decisions on review the 1975 Act had expired according to its terms. Under the new Act, the Commission is vested with jurisdiction to hear appeals from the decisions of the Rent Administrator. D.C.Code 1980 Supp., §§ 45–1683(a)(2), –1695(g). Furthermore, the law in effect at decision time required the landlord to make an election between the hardship petition and the automatic increase, to further the legislative goal of streamlining the administrative process. Where petitions are pending at the time of the enactment of a new law, they must be decided under that law if the law can reasonably be construed to apply to those petitions. *See J. Leo Kolb Co. v. Williams,* D.C.App., 111 A.2d 469, 470 (1955). All incidents of the legislative history of the 1977 Act indicate beyond peradventure that landlord hardship petitions, as of March 16, 1978, were no longer entitled to the benefits of the 1975 Act but were then subject to the requirements of the 1977 Act. Such would be equally true if the 1977 Act provided a benefit to the landlords over the 1975 Act as in *Kolb, id.* Thus, the 1977 Act was clearly applicable on its face.

Moreover, the principle that appellate courts and administrative bodies must decide cases according to existing law is so strong that it might be necessary "to set aside a judgment, rightful when rendered, but which cannot be affirmed but in violation of law." *Thorpe v. Housing Authority of Durham,* 393 U.S. 268, 282, 89 S.Ct. 518, 526, 21 L.Ed.2d 474 (1969), quoting from *United States v. Schooner Peggy,* 1 Cranch 103, 110, 2 L.Ed. 49 (1801). However, we need not go that far in the case here for when the Rent Administrator made his decision that the hardship petitioners should be approved under the 1975 Act, the 1977 Act was already in effect and, thus, his decision was erroneous when rendered.

Deciding that the new Act is applicable on its face, however, does not end the analysis. The people are entitled to protection from the fluctuating policy of the legislature. The Federalist No. 44 at 279, J. Madison. Therefore, the law in effect at the time a decision is rendered shall not be applied where "doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." *Bradley v. Richmond School Board,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974). Since there is no savings clause in the 1977 Act which provides for the application of the 1975 Act to pending petitions, and the legislative history of the 1977 Act is sparse, we must determine whether application of the 1977 Act to these petitioners causes manifest injustice. The Supreme Court's test of manifest injustice is spelled out in *Bradley, id.* at 717, 94 S.Ct. at 2019, the latest case in which the principle of retroactive application is considered. This analysis, which need not rise to a constitutional level, requires consideration of three factors: (1) the nature and identity of the parties; (2) the nature of their rights; and (3) the nature of the impact of the change in law upon those rights. Taken together, these factors may establish the *fait accompli* which prohibits application of the law in effect at the time of decision to the particular parties before the court or agency.

In this case, the parties consist, on the one hand, of the Rental Accommodations Commission, a publicly funded governmental entity administering both the rights of tenants and those of landlords as specified in the legislation enacted by the Council, and, on the other hand, of a group of landlords with a constitutional right to a fair return on their rental property. *See Apartment and Office Building Association v. Washington, supra,* 381 A.2d at 591. In

*Schooner Peggy, supra,* Chief Justice Marshall acknowledged that where the parties are private persons, the court ought to struggle greatly to avoid a construction of the law which would affect the rights of the parties. But where the law applies to "great national concerns," he indicated that the law in effect shall be given force. Here, one of the parties is duty bound to effect the legislative will in the crucial area of housing for city residents. Perhaps no other single issue has dominated more the business of our Council. In effect, rent control is a "great local concern." In light of past decisions of this court criticizing the administrative processing of hardship petitions, and in light of the legislative history of the 1977 Act—revealing a desire by landlords that rent control continue with speedier pass-through provisions and revealing a desire by tenants for less frequent rent increases—the provisions of the 1977 Act which require a one-step process to reach the 8% rate of return level are a sorely needed change. Until its constitutionality is successfully challenged in an appropriate case, these provisions enjoy a strong presumption of validity. *Cobb, supra* at 1097; *Apartment and Office Building Association v. Washington, supra,* 381 A.2d at 591. Furthermore, this is not a situation where legislation purely affects the individual rights of two private parties vis a vis one another. This legislation is intended to redound to the benefit of all, though perhaps at some sacrifice for a few. Those who do business in a regulated field must anticipate that the people, through the legislature, may modify those regulations to achieve the intended objective. *Thorpe, supra; Federal Housing Administration v. The Darlington,* 358 U.S. 84, 91, 79 S.Ct. 141, 146, 3 L.Ed.2d 132 (1958); *District of Columbia v. Linda Pollin Memorial Housing Corp.,* D.C.App., 313 A.2d 579, 584 (1973) (*rehearing en banc denied*). Consequently, we conclude that the nature of the parties and the importance of the legislative directive weigh heavily towards application of the 1977 Act.

▇▇▇▇ The second aspect of the court's concern that application of the existing law may cause injustice is the nature of the rights affected by the change. The court must refrain from applying an intervening change to pending petitions where to do so would violate a right which had matured or become unconditional. *Bradley, supra,* 416 U.S. at 720, 94 S.Ct. at 2020. Examination of the case law reveals that rights may reach this important plateau in any of four ways: (1) by the existence of a savings clause in the intervening legislation, (2) by judgment, (3) by statutory right, and (4) by ownership of property.

▇▇▇▇ The 1975 Rental Accommodations Act did contain a savings clause which permitted petitions filed before the expiration of the 1973 Rent Control Act to be decided under the terms of that prior Act. D.C. Code 1978 Supp., § 45–1627(a). This clause was held to vest petitioners with an entitlement to the rights and procedures of that Act. *Kew Gardens Joint Venture v. D. C. Housing Rent Commission,* D.C.App., 359 A.2d 269, 270 (1976) (§ 45–1627(a) not only vests the landlords' rights to these rent increases, it also specifies the court in which vindication of these rights is to be sought); *Apartment and Office Building Association of Metropolitan Washington v. Moore,* D.C. App., 359 A.2d 140, 141 (1976) (§ 45–1627(a) vests petitioners with rights to a pass-through increase calculated under the 1973 Act). The 1977 Act, however, contains no savings clause. Without such savings clause, two provisions in the Act indicate that the Council intended for the 1975 Act to be extinguished when the 1977 Act went into effect. The 1977 Act contains a rollback provision which requires landlords to reduce rent being charged on the effective date of the Act to the rent ceiling designated in that Act, except to the extent that the rent on that date exceeds the rent ceiling by an amount approved under the 1975 Act. *See* D.C.Code 1980 Supp., § 45–1687(d). This section indicates that the base rent for all units, for purposes of determining further rent increases allowable under the 1977 Act, would be affirmatively established on the day that Act commenced in force. The Act intends that only hardship petitions under the 1975 Act which had been approved

by that date would be taken into the base rent because the legislature is presumed to know that by law, pending petitions must be decided under the new Act, absent a savings clause.

■ The second provision of the Act which precludes taking the 1975 Act hardship petition in addition to the automatic increase under the 1977 Act is the same provision on which the Rental Accommodations Commission originally relied when it approved the double-dipping procedure which the landlords here are seeking. That provision reads: "No adjustment in rent under this subchapter may be implemented unless and until a full one hundred and eighty (180) days have elapsed since any prior adjustment." D.C.Code 1980 Supp., § 45–1689(h). The Commission's interpretation of this section, and that of petitioners, is that the use of the words "under this subchapter" was intended, in effect, as a savings clause for pending hardship petitions under the 1975 Act. That interpretation is improper for several reasons. First, the Council could have used a savings clause, as it did in the 1975 Act, if it had so intended. Without the savings clause in the new Act, continued viability of pending petitions would raise the thorny question of what aspects of the computation and enforcement provisions of the 1975 Act also survived, despite our holding in Kew Gardens, supra. Second, the new Act clearly intends that rent increases to the 8% rate of return level be accomplished in a one-step procedure, no more often than every six months. The petitioners' interpretation of § 45–1689(h) would make a mockery of the intent of the new Act. The new Act guarantees landlords the constitutionally sanctioned 8% rate of return.[6] Instead, these landlords seek the benefits of the new Act and the old simultaneously. Without a savings clause, only one act can be in effect at a time. Third, the original language of the provision in question comports with this intent. As originally drafted, the language of the section provided:

If any lawful rent increase, whether administratively approved under prior rent control laws or authorized by a court of competent jurisdiction has been taken during the 180 days immediately preceding the effective date of this act, a full 180 days must elapse before any increase may be taken pursuant to this act. [Bill 2–152, April 28, 1977.]

Coupled with the concept of one-step process for reaching the 8% rate of return, this language is not inconsistent with that finally approved by the Council. It graphically indicates that the Council expected that the power to grant increases under the 1975 Act would cease upon the effective date of the new Act. The language of the new Act does not substitute for a savings clause.

■ Another manner in which the rights of petitioners may rise to a level where application of the law in effect may constitute manifest injustice is by the rendering of "the requisite final, favorable determination." Greene v. United States, 376 U.S. 149, 160–61, 84 S.Ct. 615, 621–622, 11 L.Ed.2d 576 (1964); Claridge Apartments Co. v. Commissioner, 323 U.S. 141, 65 S.Ct. 172, 89 L.Ed. 139 (1944). In Apartment and Office Building Association v. Moore, supra, we held that our earlier mandate to the Housing Rent Commission in Apartment and Office Building Association v. Washington, supra, 343 A.2d 323, to act on the petitions of certain landlords for passthrough of costs within ninety days from the date of decision, prohibited the trial court from applying the 1975 Act when the act under which the petitions were originally filed had expired. "[N]either the expiration of the 90-day period nor the enactment of a new rent control program alters the rights which earlier vested." Apartment and Office Building Association v. Moore, supra at 142. In this case, petitioners have received no final, favorable determination because the erroneous decision of the Rent Administrator was delivered after the expiration of the term of the 1975 Act and is appealable by statute to the Rental Accommodations Commission and to this court. D.C.Code 1980 Supp., §§ 45–1695(g), –1697.

6. See note 1, supra.

■ Another manner in which the petitioners may be entitled to application of the 1975 Act is if they have received an unconditional statutory right under the Act which was not fulfilled. That Act provides that decisions on hardship petitions shall be made "within 60 days after such petition is filed ... unless an extension of time is approved, in writing, by both the landlord and tenant of such rental unit or by the Commission." D.C.Code 1978 Supp., § 45–1652(a). Petitioner in No. 79–435 filed his hardship petition on December 19, 1977, at which time he became unconditionally entitled to a decision by the Rent Administrator by February 18, 1978, or by a later date if time was extended in writing pursuant to the statutory requirement. We find no written approval of an extension of time in the record.[7] A hearing on the petition was held on February 23, 1978, but the Rent Administrator's decision was not rendered until June 9, 1978, and pursuant to the thirty-day notice requirement, the 6.7% increase granted to the landlord was implemented on August 1, 1978. Certain of the tenants appealed and the Commission held, on March 27, 1979, that the matter should be remanded to the Rent Administrator for consideration under the 1977 Act with the landlord required to make an election between a hardship petition and the automatic increase under the new Act.

We hold that the statutory requirement of the 1975 Act, that the Rent Administrator decide hardship petitions within sixty days, vested in the landlord who filed his petition in sufficient time to receive a decision before the expiration of the Act a right to such decision under the provisions of the 1975 Act.[8] Consequently, we reverse the decision of the Commission in No. 79–435 and remand for further proceedings. A few factual observations, however, will help to provide a guide in those proceedings. We must note that the landlord was entitled to a decision by February 18, 1978, which would have enabled him to implement the 6.7% increase, after thirty-days notice to tenants, on April 1, 1978. Thereafter, under the provisions of the 1977 Rental Accommodations Act, he would be entitled to an automatic increase on October 1, 1978, 180 days after the previous increase. See D.C.Code 1980 Supp., § 45–1689(h).[9]

---

7. The Hearing Examiner objected to the amount of documentation which the landlord provided for his expenses at the February 27, 1978 hearing and agreed to leave the record open for supplementation until March 3, 1978. At that time, the Hearing Examiner requested further documentation which was provided, over objection by the landlord, on March 10, 1978.

8. We need not decide whether it is permissible for the Council by new legislation to cut off the statutory right to a decision within sixty days. First, the right to a prompt decision was cut off not by new legislation but by delay not appropriately authorized according to the statute. See D.C.Code 1978 Supp., § 45–1652(a). Second, when the petition in No. 79–435 was filed, the expiration date of the 1975 Act was well known to all parties, thus supporting a conclusion that the right to a decision within sixty days was unconditional and not subject to intervening legislation. See 24 D.C.Reg. 5334 (Dec. 20, 1977).

9. There are some difficulties in disposing of this case on remand. First, if the tenants who originally appealed this decision wish to pursue their appeal, that appeal must be heard by the Commission on its merits under the terms of the 1975 Act. See note 10, infra. Second, the landlord is entitled to take this increase into his base rent for determination of the amount of automatic increase he is entitled to under the 1977 Act. Since the decision ought to have been rendered before the effective date of the 1977 Act, the automatic increase taken by the landlord on July 1, 1978, is proper but three months early. Third, in computing the legally chargeable rent at the present time, the Rent Administrator must recompute the rent chargeable on October 1, 1978, by adjusting it upwards to account for the increase in the base rent on which the 10% automatic increase ought to have been determined. This adjustment, however, will only have an effect on present rents if the landlord has taken only automatic increases since that date. If the landlord has elected to take even one hardship increase under the new Act, then the increase in base rent will have no effect since the landlord would have achieved his maximum rent for an 8% rate of return under the circumstances. Fourth, we should also note that the landlord improperly charged tenants 10% higher rent then he was entitled to for the months of July, August, and September. However, his entitled 6.7% hardship increase was effected on August 1, 1978, four months after it could have gone into effect.

As to petitioners in Nos. 79–212, 79–330 and 79–336, they have no vested right to any of the procedures contained in the 1975 Act. *See, e. g., Amsterdam Manhattan Associates v. Joy,* 87 Misc.2d 47, 384 N.Y.S.2d 930 (Sup.Ct.1976). Mere filing of a petition does not authorize an immediate increase in rent, *Kolb, supra* at 470, and there is no constitutional right to an automatic pass-through of costs by landlords. *Apartment and Office Building Association v. Washington, supra,* 381 A.2d at 590–91. There is no right to a particular rate of return in a regulated field as long as the regulatory scheme enjoys the presumption of reasonableness. *See, e. g., City of North Bay Village v. City of Miami Beach,* 365 So.2d 389 (Fla.App.1979). A vested right must be more than a mere expectation based on the anticipated application of existing law.

A final manner in which petitioners may avoid the impact of the 1977 Act on their rights is if the rights denied by the Act are property rights. *Union Pacific Railroad v. Laramie Stock Yards,* 231 U.S. 190, 34 S.Ct. 101, 58 L.Ed. 179 (1913). They assert that the Commission's decisions deny them an 8% rate of return. While we must acknowledge the existence of this property right, we cannot find that the 1977 Act impairs this right because there are no facts before this court as to whether application of the 1977 Act will, indeed, prohibit these landlords from obtaining a constitutionally acceptable rate of return. Such a decision must await the proper case. *See Cobb, supra* at 1097–98; *Apartment and Office Building Association v. Washington, supra,* 381 A.2d at 593 n.9; *cf. Apartment and Office Building Association v. Washington,* *supra,* 343 A.2d at 343. *See also Carr v. District of Columbia, supra* at 434–35, 543 F.2d at 919–20.

Finally, the Supreme Court's decision in *Bradley, supra,* requires us to consider the impact of the present law on the rights of the parties. The only right asserted by petitioners that is justiciable here is their claim to the use of prior year costs under the more favorable computation methods of the 1975 Act to determine their rate of return and, thus, entitlement to a higher hardship rent increase. This is a mere economic expectancy anchored in the procedural mechanisms of the old Act. The 1977 Act, presumably, maintains the stability of petitioners' rights to a fair rate of return from their property while merely altering the procedure by which it is given. Petitioners have no vested right to a particular formula for determining hardship petitions. At the appropriate time and in the appropriate factual setting, they may assert that the new formula is unfair and confiscatory. However, petitioners are operating in a field that is regulated under the police power of the legislature. *Apartment and Office Building Association v. Washington, supra,* 381 A.2d at 590. This legislation is designed to remedy a situation obviously inimical to the interests of the municipality. The continued existence of local government would be of no value if mere expectations were permitted to disarm it of power. Even if it can be said that petitioners' rights to the 1975 Act formula have vested, they may be defeated by a proper exercise of the police power.[10] Sutherland Statutory Construction § 41.06 at 270 (1973).

---

We leave to the Rent Administrator the decision of the appropriate adjustments to be made, with a last note that rent increases to compensate retroactively for rent not earlier taken are impermissible.

10. Petitioners contend that the 1975 Act and the older cost statistics must be used because the intent of the legislation is to make up for inflationary losses from the past. In rejecting this argument, we note that in *Thorpe, supra,* 393 U.S. at 274, 89 S.Ct. at 522, the Supreme Court reversed the North Carolina Supreme Court's application of earlier enacted regulations where the North Carolina court had found that "all crucial events" had occurred prior to the date on which the new regulations were enacted and "[t]he rights of the parties had matured and been determined before" that date. This "critical events" analysis is equally inapplicable in this case to entitle petitioners to the formula of the 1975 Act and their prior cost statistics in computing rate of return. The collection of rent is a future entitlement, the regulation of which is subject to law in effect at the time of decision. *See Fleming v. Rhodes,* 331

An intervening law may also have an unfair impact on petitioners' rights where petitioners have reasonably and significantly altered their circumstances in reliance on the prior law. *See Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 419, 91 S.Ct. 814, 825, 28 L.Ed.2d 136 (1971); Hochman, *supra,* at 696. There is not sufficient evidence in the record to conclude that petitioners have made extensive financial expenditures in reasonable reliance on the prior law to the extent that application of the law in effect at the time of decision would create manifest injustice.

Accordingly, the Rental Accommodations Commission's decision in Nos. 79–212, 79–330, and 79–336 are *affirmed,* and that in No. 79–435 is *reversed and remanded* for further consideration consistent with this opinion.

U.S. 100, 107, 67 S.Ct. 1140, 1144, 91 L.Ed. 1368 (1947) (act providing for injunctions against eviction of tenants is not improperly retroactive as it affects earlier judgments against tenants).

This court has permitted application of expired rent control law in the past but only on review of a Commission decision where the actual application of the procedural formula was at issue and where the rent increase was already in effect. *See Tenants of 3039 Q Street, supra; Tenants Council of Tiber Island, supra.*