*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 19-CV-1161

DISTRICT OF COLUMBIA
METROPOLITAN POLICE DEPARTMENT, APPELLANT,

V.

DISTRICT OF COLUMBIA
PUBLIC EMPLOYEE RELATIONS BOARD, *et al.*, APPELLEES.

Appeal from the Superior Court
of the District of Columbia
(2018-CA-006737-P(MPA))

(Hon. Robert R. Rigsby, Trial Judge)

(Argued April 27, 2022      Decided September 7, 2023)

*Carl J. Schifferle*, Deputy Solicitor General, with whom *Karl A. Racine*, Attorney General for the District of Columbia at the time the briefs was filed, *Loren L. AliKhan*, Solicitor General at the time the brief was filed, *Caroline S. Van Zile*, Principal Deputy Solicitor General at the time the brief was filed, and *Graham E. Phillips*, Assistant Attorney General at the time the brief was filed, were on the brief, for appellant.

*Geoffrey H. Simpson*, with whom *Bruce A. Fredrickson* was on the brief, for appellee District of Columbia Public Employee Relations Board.

*Daniel J. McCartin*, with whom *Anthony M. Conti* was on the brief, for appellee Fraternal Order of Police/Metropolitan Police Department Labor Committee.

Before BECKWITH and DEAHL, *Associate Judges*, and FISHER, *Senior Judge*.

FISHER, *Senior Judge*: The Metropolitan Police Department ("MPD") challenges a decision of the Public Employee Relations Board ("PERB") arising from MPD's efforts to terminate one of its officers. Construing D.C. Code § 5-1031 and its tolling provision, an arbitrator found that MPD waited too long to serve notice of the proposed disciplinary action and ordered that the officer be reinstated. MPD appealed to PERB, which upheld the arbitration award. In its appeal to this court, MPD argued that its notice was timely and that the arbitration award should be set aside, while PERB and the Fraternal Order of Police ("FOP") defended PERB's decision to uphold the award. As we discuss below, recent legislation may have substantially changed the issues we must address.

On April 21, 2023, the Comprehensive Policing and Justice Reform Amendment Act of 2022 ("Reform Act"), D.C. Law 24-345, 70 D.C. Reg. 953 (2023), became effective; some of its provisions repealed § 5-1031(a-1)'s "90-day rule" as it applied to MPD officers and stated that the repeal applies "to any matter pending[] before any court or adjudicatory body" at the time the act became effective. *Id.* §§ 117(a), 301(b). MPD and FOP have submitted supplemental briefing on the retroactive application of the repeal. We agree with MPD that the Reform Act is applicable to this case, and we reject FOP's challenges to the

constitutionality of applying it retroactively. Accordingly, we reverse the judgment of the Superior Court and remand for further proceedings.

## I. The Factual and Procedural Background

On March 28, 2010, Officer Paul Lopez was arrested for solicitation of prostitution and he was arraigned the next day in Superior Court. At a status hearing on April 12, 2010, Officer Lopez agreed to enroll in "John School" in exchange for the government's promise to dismiss the charge if he successfully completed the diversion program. Officer Lopez completed the program on May 1, 2010, and, after he provided proof of his compliance at a hearing on May 19, 2010, the charge was formally dismissed.

On September 23, 2010, MPD served Officer Lopez with a Notice of Proposed Adverse Action, seeking to terminate his employment based on his March 28 arrest. MPD held an Adverse Action Hearing on May 17, 2011, and ultimately issued a Final Notice of Adverse Action recommending termination. Officer Lopez was informed that he would be terminated effective August 19, 2011. He then appealed to the Chief of Police, but that appeal was denied.

After his unsuccessful appeal to the Chief of Police, Officer Lopez had two options for seeking further review: by appealing to the Office of Employee Appeals ("OEA"), *see* D.C. Code § 1-616.52(b), or by demanding arbitration pursuant to the collective bargaining agreement, *see id.* § 1-616.52(e). An arbitrator's award is reviewable by PERB. D.C. Code § 1-605.02(6). Decisions by both OEA and PERB are appealable to the Superior Court, and that court's decisions may, in turn, be appealed to this court. *Id.* §§ 1-606.03(d), 1-617.13(c).[1] Officer Lopez chose to pursue arbitration.

---

[1] This court has never definitively construed § 5-1031 and its tolling provision. Since both OEA and PERB hear appeals from employment disputes, however, each has had to deal with § 5-1031 and its tolling provision, and they sometimes have done so in disparate ways. *See, e.g.*, *Butler v. Metro. Police Dep't*, 240 A.3d 829, 834-35 (D.C. 2020) (describing three different applications of the statute made by an OEA administrative judge, the OEA Board, and the Superior Court); *Metro. Police Dep't v. Fraternal Ord. of Police/Metro. Police Dep't Lab. Comm.* (*Glover*), No. 18-A-17, 66 D.C. Reg. 6056, slip op. at 5-6 (Pub. Emp. Rels. Bd. Mar. 21, 2019) (interpreting the plain meaning of § 5-1031(b) to require tolling of 90-day rule between MPD referral to U.S. Attorney's Office and subsequent decision not to prosecute). Some of PERB's decisions also appear to conflict with its own prior rulings. *Compare Glover*, No. 18-A-17, slip op. at 5-6, *with Metro. Police Dep't v. Fraternal Ord. of Police/Metro. Police Dep't Lab. Comm.* (*Fowler*), No. 17-A-06, 64 D.C. Reg. 10115, slip op. at 12-13 (Pub. Emp. Rels. Bd. Aug. 17, 2017) (identifying the conclusion of an investigation under § 5-1031(b) as "a factual question rather than a legal question" without further interpreting the statute). Review of those agency rulings by the Superior Court is yet another source for varying interpretations of the statute. *See D.C. Metro. Police Dep't v. D.C. Off. of Emp. Appeals*, No. 2018-CA-003991-P(MPA), slip op. at 6 (D.C. Super. Ct. Mar. 19, 2019) (concluding that tolling under the statute ceased when pending criminal charges were dismissed, rather than at the time of arrest); *D.C. Metro. Police Dep't*

Officer Lopez and MPD presented the matter to the arbitrator "on the administrative record" without an additional hearing, and the arbitrator ultimately determined that Officer Lopez should be reinstated. Interpreting D.C. Code § 5-1031, which required MPD to commence adverse actions within 90 business days of the time that MPD knew or should have known of the misconduct at issue, the arbitrator found that MPD's Notice of Adverse Action was untimely. The arbitrator based this ruling on his interpretation of the tolling provision in the statute and his conclusion that tolling had stopped when the government filed criminal charges, not when the court later dismissed them.

MPD petitioned PERB to overturn the arbitrator's decision, arguing that the award on its face was contrary to law and public policy, one of the three statutory grounds on which PERB may modify, set aside, or remand an arbitration award. *See* D.C. Code § 1-605.02(6). PERB denied MPD's request, and MPD next appealed to the Superior Court, which affirmed PERB's decision. This appeal followed.

---

*v. D.C. Pub. Emp. Rels. Bd.*, No. 2018-CA-006737-P(MPA), slip op. at 5-6 (D.C. Super. Ct. Oct. 29, 2019) (commenting, in this case, that the arbitrator's determination that the criminal investigation concluded when criminal charges were filed was "fair").

The parties' initial briefs and oral arguments primarily focused on the standard under which PERB reviews an arbitral award and, in turn, the standard that we should apply in reviewing PERB's decision. While this case was still pending, the Council of the District of Columbia ("Council") repealed § 5-1031(a-1) and expressly stated that the repeal "shall apply retroactively to any matter pending, before any court or adjudicatory body, as of the effective date of this act." Reform Act §§ 117(a), 301(b). Much of the briefing and argument by the parties may have been obviated by the enactment of this legislation; therefore, we must determine whether this new legislation applies to this appeal.

## II. Discussion

FOP contends that, by its own terms, the Reform Act does not apply to this appeal and, alternatively, that if the Council intended it to apply, we should decline to enforce it because doing so would create manifest injustice. FOP also argues that giving retroactive effect to the repeal not only would usurp judicial power and thus violate principles of separation of powers, but also would violate the Contracts Clause of the Constitution by substantially impairing the collective bargaining agreement between FOP and MPD. We take each of FOP's arguments in turn.

**A. The Reform Act Applies to This Appeal**

FOP argues that the repeal does not apply here because this appeal is no longer pending. Noting that the parties had already submitted their briefs and presented oral argument, FOP asserts, without citation to authority, that "at the time the Reform Act became law, this appeal had concluded and the parties were merely awaiting the administrative issuance of a formal opinion by the [c]ourt." This argument reflects a woeful misunderstanding of the decisional process. We decline to read into the statute a definition of "pending" that so radically conflicts with its ordinary meaning: "[r]emaining undecided; awaiting decision." *Pending*, BLACK'S LAW DICTIONARY (11th ed. 2019); c*f. Yovino v. Rizo*, 139 S. Ct. 706, 709 (2019) ("[I]t is generally understood that a judge may change his or her position up to the very moment when a decision is reached."); *In re Estate of Green*, 896 A.2d 250, 253-54 (D.C. 2006) ("After an opinion has been filed or a judgment entered in an appeal, the Court of Appeals issues a mandate," which is what "terminates jurisdiction of the Court of Appeals, and re-vests jurisdiction back in the Superior Court.").

We are also unpersuaded by FOP's argument that our customarily "narrow" review of PERB's decisions, *see D.C. Metro. Police Dep't v. D.C. Pub. Emp. Rels.*

*Bd.* (*MPD v. PERB II*), 282 A.3d 598, 603 (D.C. 2022), insulates this case from the reach of the Reform Act. By its express terms, the repeal of § 5-1031(a-1) applies to "*any* matter pending, before *any* adjudicatory body." Reform Act § 301(b) (emphases added). That PERB does not apply de novo review, nor do we, is irrelevant in light of the fact that "an arbitral award can be set aside if a 'clear violation of law' is 'evident on the face of the arbitrator's award.'" *MPD v. PERB II*, 282 A.3d at 604 (quoting *D.C. Metro. Police Dep't v. D.C. Pub. Emp. Rels. Bd.* (*MPD v. PERB I*), 901 A.2d 784, 789 (D.C. 2006)).

As for FOP's argument that PERB's decision was "not clearly erroneous as a matter of law" at the time it was issued, such a reading would effectively ignore the Reform Act's retroactivity provision, and would be contrary to the Council's clear statement that the repeal is intended to "preclud[e] any arbitrator, adjudicator, administrative body, or court from modifying or reversing any disciplinary action— or affirming such a modification or reversal on appeal—on the basis of an agency's failure to comply with the deadlines set forth in D.C. Code § 5-1031." Comprehensive Policing and Justice Reform Amendment Act of 2022, Report on Bill 24-320 before the Committee on the Judiciary and Public Safety, Council of the District of Columbia at 33 (Nov. 30, 2022) ("Report on Bill 24-320"). Moreover, "the principle that appellate courts . . . must decide cases according to existing law

is so strong that it might be necessary to 'set aside a judgment, rightful when rendered, but which cannot be affirmed but in violation of law.'" *Scholtz P'ship v. D.C. Rental Accommodations Comm'n*, 427 A.2d 905, 914 (D.C. 1981) (quoting *Thorpe v. Hous. Auth. of Durham*, 393 U.S. 268, 282 (1969)); *see also Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 226 (1995) ("When a new law makes clear that it is retroactive, an appellate court must apply that law in reviewing judgments still on appeal that were rendered before the law was enacted, and must alter the outcome accordingly." (first citing *United States v. Schooner Peggy*, 5 U.S. (1 Cranch) 103 (1801); and then citing *Landgraf v. USI Film Prods.*, 511 U.S. 244, 273-80 (1994))).

We need not determine whether the decisions below were "rightful when rendered." *Scholtz*, 427 A.2d at 914 (quoting *Thorpe*, 393 U.S. at 282). The arbitrator's award reinstating Officer Lopez was premised on MPD's supposed failure to comply with a statute that the Council has now decided should not apply to disciplinary matters involving police officers. Therefore, unless the Reform Act is inapplicable or invalid for some other reason, the award on its face is contrary to law and must be set aside. We turn now to FOP's other arguments that we should not apply the Reform Act to this case.

## B. Applying the Reform Act Does Not Create Manifest Injustice

Courts recognize a presumption against retroactivity, which "has been consistently explained by reference to the unfairness of imposing new burdens on persons after the fact." *Landgraf*, 511 U.S. at 270. In *Landgraf*, the Supreme Court made clear that this "traditional presumption" against retroactivity applies in the "absen[ce of] clear congressional intent favoring such a result." *Id.* at 280; *accord Holzsager v. D.C. Alcoholic Beverage Control Bd.*, 979 A.2d 52, 57 (D.C. 2009) (same). The Court also explained that constitutional restrictions on retroactivity "are of limited scope," and that, "[a]bsent a violation of one of those specific provisions, the potential unfairness . . . is not a sufficient reason for a court to fail to give a statute its intended scope." *Landgraf*, 511 U.S. at 267; *accord District of Columbia v. Beretta U.S.A. Corp.*, 940 A.2d 163, 174 (D.C. 2008). Here, the Council "expressly prescribed the [repeal's] proper reach" by enacting § 301(b) of the Reform Act; therefore, we do not apply this presumption. *Landgraf*, 511 U.S. at 280; *Holzsager*, 979 A.2d at 56.

MPD asserts that the combination of *Landgraf* and the clear legislative intent of the Reform Act should end our inquiry into manifest injustice. FOP suggests to the contrary that manifest injustice provides an exception to enforcement regardless of the Council's intent, citing *Menna v. Plymouth Rock Assurance Corp.*, 987 A.2d 458, 463 n.15 (D.C. 2010) ("When the legislature makes clear that a new law is retroactive . . . , an appellate court must apply that law on appeal, unless to do so would result in manifest injustice or engender substantial due process concerns." (citation omitted)).[2] It is not at all clear, based solely on *Menna*'s footnote, that we are authorized to probe for manifest injustice when the Council has clearly given a statute retroactive effect.[3] However, assuming in FOP's favor that our case law

---

[2] To the extent that FOP's argument against retroactivity is based on due process claims, it provides no analysis to support that argument. In any event, "it cannot be said that lifting the bar of a statute of limitation so as to restore a remedy lost through mere lapse of time is per se an offense against [due process]." *Chase Sec. Corp. v. Donaldson*, 325 U.S. 304, 316 (1945). And FOP has not demonstrated "special hardships or oppressive effects" arising from the retroactivity provision, or that Officer Lopez's conduct would have been different if he had foreseen the change. *Id.*

[3] The court in *Menna* "had no such concerns" about manifest injustice, *id.*, and the cases cited there do not provide further guidance. *See Holzsager*, 979 A.2d at 58-59 (suggesting that prefatory statement of purpose of newly enacted law could be a "clear indication of legislative intent" but nevertheless assuming that the Council did not focus on whether repeal of provision would affect pending matters); *Beretta*, 940 A.2d at 174, 177-78 (holding that Congress did not violate the Due Process Clause by barring plaintiffs' pending cause of action through new legislation "[u]ndeniably" intended to apply to pending cases).

permits us to scrutinize the law for manifest injustice, we conclude that no manifest injustice will result from giving the repeal retroactive effect in this case.

In evaluating whether a party will suffer manifest injustice, we consider "(1) the nature and identity of the parties, (2) the nature of their rights, and (3) the nature of the impact of the change in law upon those rights." *Holzsager*, 979 A.2d at 57 (quoting *Bradley v. Sch. Bd. of City of Richmond*, 416 U.S. 696, 717 (1974)). First, FOP contends that MPD was acting in a private capacity and, therefore, we should not retroactively apply the repeal because doing so would affect the rights of "private parties vis a vis one another." *Scholtz*, 427 A.2d at 915. Simply put, we disagree that MPD acted as a private party by entering into a collective bargaining agreement with police officers, who hold "critical positions of public trust" within a public agency. Report on Bill 24-320 at 32-33. Moreover, "the law in effect shall be given force" when it involves a "great local concern" and is "intended to redound to the benefit of all, though perhaps at some sacrifice for a few." *Scholtz*, 427 A.2d at 915. The Reform Act undeniably implicates these public interests. Passage of the Reform Act, including the retroactivity provision here, was part of the Council's response to "demand[s for] greater police accountability and transparency," Report on Bill 24-320 at 2, and the result of proposed and emergency legislation dating back to 2020, *id.* at 2, 47-49 (chronologically listing legislative history). Thus, "the nature of the

parties and the importance of the legislative directive weigh heavily" in favor of giving the repeal retroactive effect. *Scholtz*, 427 A.2d at 915.


FOP next argues that, in considering the "nature of the rights affected by the change," we must refuse to apply "an intervening change to pending petitions where to do so would violate a right which had matured or become unconditional." *Scholtz*, 427 A.2d at 915. FOP's argument that Officer Lopez's rights have "matured" because the *arbitrator* reached a decision completely ignores the system that the Council enacted for administrative and judicial review of an arbitrator's ruling on disciplinary grievances of public employees. *See* D.C. Code § 1-605.02(6); *see also Plaut*, 514 U.S. at 227 ("It is the obligation of the last court in the hierarchy that rules on the case to give effect to Congress's latest enactment, even when that has the effect of overturning the judgment of an inferior court, since each court, at every level, must 'decide according to existing laws.'" (quoting *Schooner Peggy*, 5 U.S. (1 Cranch) at 109)). And we disagree that whatever benefits Officer Lopez may have derived from the now-repealed § 5-1031(a-1) were unconditional, given that this appeal (at least initially) questioned whether § 5-1031(b)'s tolling provision was correctly applied. Contrary to FOP's assertion, no right to reinstatement had "vested."

Finally, we consider "the impact of the present law on the rights of the parties." *Scholtz*, 427 A.2d at 918. FOP makes no argument that the responsibilities or substantive obligations of the parties were altered by the repeal of § 5-1031(a-1). Instead, its argument is nothing more than an expression of its frustrated hope that the 90-day rule would remain unchanged in perpetuity. But "[t]he continued existence of local government would be of no value if mere expectations were permitted to disarm it of power." *Id.*

In sum, we reject FOP's argument that the Council's repeal of § 5-1031(a-1), which it expressly made retroactive to all pending cases, cannot be applied to the current case because to do so would create manifest injustice.

**C. The Reform Act Does Not Violate Separation of Powers Principles**

Citing *United States v. Klein*, 80 U.S. 128 (1871), and *Bank Markazi v. Peterson*, 578 U.S. 212 (2016), FOP contends that the Reform Act, "[a]s interpreted by MPD," "is an unconstitutional attempt by the MPD and the D.C. Council to issue

a judicial mandate." It argues that retroactive application of the repeal to this case is an attempt to "'direct the result' concerning what is clearly erroneous [in this type of case] 'without altering the legal standards' governing PERB's review of arbitration decisions." We agree with MPD that the Council's directive to apply the repeal of § 5-1031(a-1) to pending cases does not violate the restrictions imposed on legislative action by separation of powers principles.[4]

FOP correctly states that "the Reform Act neither modifies this Court's standard of review nor PERB's standard of reviewing the Arbitration Award." However, it mistakenly asserts that there is no new legal standard to apply. It bases this assertion on the curious claim that "the law at issue on this appeal is *not* the 90-day rule itself and does *not* concern any legal interpretation of the 90-day rule."

The arbitrator's reinstatement of Officer Lopez was squarely based on his interpretation of the 90-day rule and its tolling provision. By repealing that rule and directing that the repeal be applied to pending cases, the Council obviously was changing the substantive legal standards that the arbitrator, PERB, OEA, the

---

[4] The District of Columbia adheres to Separation of Powers principles. *See* D.C. Code § 1-301.44(b); *see also Hessey v. Burden*, 584 A.2d 1, 5-6 (D.C. 1990).

Superior Court, and this court should apply. The new legal standard is that no statute of limitations governs disciplinary proceedings against police officers. Reviewed in light of this new legal standard, the award directing reinstatement was "contrary to law and public policy." D.C. Code § 1-605.02(6).

The Council did not intrude upon judicial power by enacting this legislation. The Supreme Court has made it clear that "Congress . . . may amend the law and make the change applicable to pending cases, even when the amendment is outcome determinative." *Bank Markazi*, 578 U.S. at 215. This is not a situation where the Council was impermissibly attempting to dictate the outcome of a particular case by compelling "findings or results under old law." *Robertson v. Seattle Audubon Soc'y*, 503 U.S. 429, 438 (1992).

The Reform Act's legislative history reveals that the Council first considered extending the 90-day rule only for certain conduct (to 180 business days) or further extending the rule (to 365 days) and eliminating the need for business-day calculations. Report on Bill 24-320 at 11, 32. By instead repealing the provision in question, the Council has avoided "creating needless confusion about the timeline for initiating discipline," *id.* at 32; see *supra* note 1, and opted for no timeline to be

applied at all. Retroactive application of the repeal undoubtedly "more fully effectuate[s]" the Council's rational purpose, *Pension Benefit Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 730 (1984), of increasing the accountability of the District's police officers, who hold "critical positions of public trust," by ensuring that a "technical obstacle" does not thwart the disciplinary process in cases that have not been finally adjudicated, Report on Bill 24-320 at 2, 32-33. Retroactive application also greatly simplifies the legal standard to be applied, in that calculating the number of business days elapsed and determining when the tolling effect of an investigation has concluded are no longer relevant for either pending or future cases. *See Pension Benefit Guar. Corp.*, 467 U.S. at 730 (retroactive application must be justified by a rational legislative purpose). These changes are the very essence of "altering the legal standards."

**D. The Reform Act Does Not Violate the Contracts Clause**

Finally, applying the repeal of § 5-1031(a-1) to this case does not violate the Contracts Clause. *See* U.S. Const. art. I, § 10, cl. 1 ("No State shall . . . pass any . . . Law impairing the Obligation of Contracts . . . ."); D.C. Code § 1-203.02 (subjecting "the legislative power of the District . . . to all the restrictions and limitations" of the

Contracts Clause of the U.S. Constitution).  To establish a violation of the Contracts Clause, a party must demonstrate "(1) that there has been a substantial impairment of a contractual relationship; (2) that the impairment is not justified by a 'significant and legitimate public purpose'; or if so justified, (3) that the impairment is not based upon reasonable conditions or 'of a character appropriate to the public purpose justifying [the legislation's] adoption.'"  *W. End Tenants Ass'n v. George Washington Univ.*, 640 A.2d 718, 732 (D.C. 1994) (alteration in original) (quoting *Energy Rsrvs. Grp., Inc. v. Kan. Power & Light Co.*, 459 U.S. 400, 411-12 (1983)).

FOP argues, citing *MPD v. PERB I*, 901 A.2d at 789, that the Reform Act substantially impairs the collective bargaining agreement because the arbitrator's decision, "having already been rendered, has become part of a binding contract between the MPD and the D.C. Police Union."  As an initial matter, we are skeptical that the statement to which FOP cites could stand for the proposition that the arbitral award in this case became part of the parties' collective bargaining agreement *before* a final judgment has been issued on appeal.  More fundamentally, *MPD v. PERB I* concerned an arbitrator's interpretation of a provision in a collective bargaining agreement, rather than a statute.  What the cited language attempts to clarify is that the parties become bound by an arbitrator's interpretation of the law "[w]hen *construction of the contract* implicitly or directly requires an application of external

law." *Id.* (emphasis added) (quoting *Am. Postal Workers Union v. U.S. Postal Serv.*, 789 F.2d 1, 6 (D.C. Cir. 1986)). In that case, "the parties [had] bargained for the arbitrator's interpretation of Article 12, Section 6" of the collective bargaining agreement. *Id.* We, therefore, declined to reinterpret the contract by applying a presumption that "comes into play in a *court's* interpretation of statutes and regulations." *Id.* at 788, 789. We recognized there, as we do here, the arbitrator's role as the "contract reader"—that parties who have agreed to arbitrate have "'bargained for [the arbitrator's] construction of the *contract*,' not a court's." *Id.* at 789 (alteration in original) (emphasis added) (first quoting *United Steelworkers v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 599 (1960); and then quoting *Am. Postal Workers*, 789 F.2d at 6).

FOP claims that the Reform Act "significantly interferes with the MPD's decades-old obligation" to take adverse action "only within the strictures of the 90-day rule," but it has not identified any portion of the contract which rendered that obligation contractual rather than (or in addition to) statutory, and neither the arbitrator's award nor PERB's decision so much as implies that the award was premised on an interpretation of the collective bargaining agreement itself. In fact, the arbitrator's award refers to the collective bargaining agreement only twice: mentioning; (1) FOP's invocation of the arbitration provision; and (2) the provision

governing the costs of arbitration. Here, the arbitrator was interpreting a statute, not a contract, and his award was not yet final.

But even assuming, as FOP contends, that the collective bargaining agreement was somehow impaired by the Reform Act, we conclude that the impairment here is not "substantial." *See Fraternal Ord. of Police, Metro. Police Dep't Lab. Comm., D.C. Police Union v. District of Columbia*, 45 F.4th 954, 961 (D.C. Cir. 2022) ("Retrospective laws violate the Contract Clause only if they 'substantially' impair existing contract rights." (quoting *Sveen v. Melin*, 138 S. Ct. 1815, 1822 (2018))). "In determining the extent of the impairment, we are to consider whether the industry the complaining party has entered has been regulated in the past," *Energy Rsrvs.*, 459 U.S. at 411, and "the extent to which the law undermines the contractual bargain, interferes with a party's reasonable expectations, and prevents the party from safeguarding or reinstating his rights," *Sveen*, 138 S. Ct. at 1822.

First, "the D.C. government has heavily regulated collective bargaining for decades" and, more specifically, has regulated the deadline for beginning adverse action, which has fluctuated in duration and in how the start and end of the period are determined, "so [FOP] was on notice that future statutory changes were likely."

*Fraternal Ord. of Police*, 45 F.4th at 961; *see* Omnibus Public Safety Agency Reform Amendment Act of 2003, Report on Bill 15-32 before the Committee on the Judiciary, Council of the District of Columbia at 14-15 (Dec. 9, 2003) (discussing the previous 45-day rule, its repeal, and the subsequent enactment of the 90-day rule in § 5-1031). Second, our conclusion that this litigation remained pending at the time the Reform Act went into effect, see *supra* Section II.A, not to mention that PERB and the Superior Court reviewed the arbitration award, undercuts the reasonableness of any expectation that the award would not be set aside, regardless of the Reform Act's passage. FOP has not demonstrated any other way in which the collective bargaining agreement is affected by the Reform Act. As MPD points out, Officer Lopez's "right to arbitrate his termination [is] a right left intact by the Reform Act." We thus are satisfied that the Reform Act does not substantially impair the parties' agreement and does not violate the Contracts Clause.[5]

---

[5] Our conclusion is bolstered by comparing the impairment FOP asserts in this litigation to that which the D.C. Circuit held was not substantial. *See Fraternal Ord. of Police*, 45 F.4th at 961 (holding that the Council's act stripping FOP of the ability to negotiate disciplinary procedures did not violate the Contracts Clause, even though FOP and MPD had previously agreed that "existing disciplinary procedure 'shall be incorporated into any successor' agreement unless changed through a prescribed process"), *cert. denied*, 143 S. Ct. 577 (2023).

### III.   Conclusion

The arbitration award ordered that Officer Lopez be reinstated based solely on the arbitrator's view that MPD had violated the 90-day rule then embodied in D.C. Code § 5-1031 (repealed 2023).  Because we conclude that the repeal of the 90-day rule must be applied here, the award is on its face contrary to the Reform Act, and therefore must be set aside.  Accordingly, the judgment of the Superior Court is reversed, and the case is remanded to PERB with instructions to vacate its decision, set aside the arbitrator's award, and remand to the arbitrator for further proceedings consistent with this opinion.

*So ordered.*